# OKLAHOMA RY. CO. v. MILAM.

No. 3410.   Opinion Filed March 2, 1915.

(147 Pac. 314.)

1.   TRIAL—Instructions Ignoring Defense. In an action against a street railway company to recover damages for the death of a person killed by the railway company's car within the city limits, and wherein contributory negligence on the part of the deceased is pleaded as a defense, and there is evidence tending to sustain such defense, an instruction which ignores the defense of contributory negligence and tells the jury that the operation of defendant's car, at a. rate of speed exceeding, the city speed limit, is negligence per se, and, if such negligence is the proximate cause of the injury, the defendant will be liable, is reversible error.

2.   APPEAL AND ERROR—Trial—Instructions—Cure of Error. Such error was not cured by another instruction which tells the jury, in substance, the defendant will not be liable if the deceased was guilty of contributory negligence in going upon the defendant's car track, in front of the approaching car, which struck him. unless the doctrine of the last clear chance applies. The two instructions are confusing, and it is uncertain which the jury will follow, and when the evidence is conflicting, a verdict and judgment for either party, under such conflicting instructions, should be reversed

3.   APPEAL AND ERROR—Negligence—Contributory Negligence— Submission of Issues. Under section 6, art. 23 (section 355, William's, Const., it is the duty of the trial court to submit to the jury the defense of contributory negligence in every case where it is pleaded and there is evidence tending in any degree to prove it; and failure to do so is reversible error.

Kane, C. J., dissenting.

(Syllabus by the Court).

*Error from District Court, Oklahoma County;*

*John J. Carney, Judge.*

· Action by Maude Milam, executrix of the estate of Martin V. Milam, deceased, against the Oklahoma Railway Company. Judg-

ment for plaintiff, and defendant brings error. Reversed and remanded.

*Shartel, Keaton & Wells,* for plaintiff in error.

*Du Mars & Vaught* and *Warren K. Snyder,* for defendant in error.

BROWN, J. The defendants in error commenced this action in the district court November 22, 1909, to recover of the plaintiff in error for the death of Martin V. Milam, who died as the result of injuries inflicted by one of plaintiff in error's street cars July 27, 1909, and it was alleged by plaintiff below that such death was the result of negligence on the part of the railway company's employees and servants in change of said car. Plaintiff in error, defendant below, answered by general denial and pleaded contributory negligence on the part of deceased as the proximate cause of his death. Plaintiff replied, denying specifically that deceased was guilty of contributory negligence on his part which in any manner contributed to his death. On these issues the case went to trial July 25, 1911, and on July 27th the jury returned a verdict in favor of plaintiff against the defendant for $5,000. The defendant in due time filed motion for new trial, which was overruled by the court and exceptions taken, and it brings the case to this court on error.

Plaintiff in error submits eight assignments of error for the consideration of this court, wherein it is alleged that the trial court committed reversible error in overruling the motion for new trial and in giving certain instructions to the jury and in refusing to give other instructions requested by plaintiff in error. The errors assigned here were properly complained of and brought to the attention of the trial court in plaintiff in error's motion for new trial and exceptions duly taken to the overruling thereof. A brief statement of the facts in the case will be of service in

determining whether the trial court committed error in giving the jury certain instructions complained of by plaintiff in error.

On July 27, 1909, Martin Milam, the deceased, in company with his wife, the defendant in error, his sister-in-law and some other relatives, came west on the north side of Twenty-Fifth street in the city of Oklahoma City, to the Belle Isle car line, across the tracks to the west side of said car line, and stopped at the place where passengers usually board the south-bound cars; that at this point there was a double-track line, all south-bound cars using the west track and all north-bound cars using the east track, the tracks being about 10 feet apart; that a few minutes after reaching Twenty-Fifth street the deceased helped his wife and sister-in-law and the other members of his family on the car known as the Belle Isle car, going south; that while the Belle Isle car was standing at Twenty-Fifth street the Britton car approached from the south, on the east track. After the Belle Isle car started south the deceased crossed the west track immediately behind the Belle Isle car and started in the northeasterly direction toward the sidewalk on the north side of Twenty-Fifth street, and which was west of both car lines and in the direction of his home. While crossing the east track on Twenty-Fifth street the Britton car going north struck him with great force, resulting in his death.

The testimony of W. W. Mason, the motorman who operated the car that killed the deceased, is to the effect that when he first saw the deceased his car had crossed Twenty-Fourth street and was running about 30 miles an hour, and that at that speed it required about a block in which to stop it; that when he saw deceased he whistled at him, and he was then about 15 feet from the Britton car track and was walking toward the track.

"The man walked slowly, an ordinary gait, wasn't slow, wasn't fast, toward the track I was on, and possibly a little bit to the north until he was about the center of the space between the two tracks, that is, the north and south bound tracks, and

stopped like he was going to wait for the car to go by. I had already blowed the whistle a time or two to him in warning and he stopped like other people, like they were going to let the car go by, and he started again then and stopped right on the track I was on. Q. How many steps after that from the point where you say he stopped until he stepped on your track? A. about three, between two and three steps. Q. When he started again what did you do? A. Applied the brakes to the car. Q. How far were you from him when he made the second start? A. I don't think over 50 feet."

Jack Young testified that the Britton car, after the accident, stopped between Twenty-Sixth and Twenty-Seventh streets. Mrs. Linn testified that the Britton car, after the accident, ran to Twenty-Seventh street before it stopped. Witness Sheeler testified that he was working on a building near the place of the accident at the time it occurred, and further:

"Q. At the time, going back to the place where you saw Mr. Milam, just tell the jury exactly what Mr. Milam did from the time you saw him until the car struck him. A. He just simply started across the track and was walking across the track going east when the car struck him. Q. Did you see him stop? A. No, sir; I did not. Q. Did you see him all the time from the time he started until the time he was struck? A. I saw him [from] the time he left the car until he was struck. Q. You didn't see him stop? A. No, sir. Q. In what direction did he travel from the end of the car? A. Well, he was on the southwest side of the Belle Isle car line of Twenty-Fifth street, that corner, and he was going kinder northeasterly direction, kinder cornering across there. Q. You mean he was on the south side of the street on the west side? A. Yes, sir. Q. He traveled diagonally across to the sidewalk of the north side of Twenty-Fifth street and to the east side of the track? A. Yes, sir; toward the street there."

And on cross-examination:

"Q. At what gait was he going? A. Seemed to be stepping pretty fast, seemed to be walking down tolerably fast, an ordinary walk. Q. Well, an ordinary walk? A. Yes, sir; an ordinary

walk like. Q. You did not see Mr. Milam look up at any time? A. No, sir."

Witness Moore testified, in part, as follows:

"Q. Did he do anything from the time he started until the car struck him? A. If he did, I never saw it, and I was looking right at him. Q. Did he walk in a straight way or hesitate? A. Well, of course, I looked at it endways; I could not tell whether he walked straight across the tracks or angling. Q. What I want to know is, did he stop anywhere? A. No, sir; he never stopped at all, I could safely swear that. Of course, it all went out of my memory until this morning."

The plaintiff in error assigns a number of errors, one of which is the giving of instruction No. 11 as follows:

"If you find from the evidence that a car operated by defendant's servants struck the plaintiff's intestate within the corporate limits of the city of Oklahoma City, and that at such time the car was being operated at a rate of speed exceeding that prescribed by the ordinance of said city then in force, within the limits of the said city, such violation of the ordinance is in and of itself negligence, and if such negligence is the proximate cause of the accident, the defendant would be liable for the resulting injury."

Defendant below excepted to this instruction for the reason that it instructs the jury they may find a verdict for plaintiff on account of excessive speed of the car, if such negligence is the proximate cause of the accident, regardless of whether the plaintiff's intestate was guilty of contributory negligence or not. The fact that the car at the time of the accident was moving at a rate which exceeded the speed limit was uncontroverted. The city ordinance was introduced in evidence, which stated the speed limits within the corporate limits should not exceed an average of 15 miles per hour, while the motorman operating the car which struck the deceased testified his car was running at a rate of about 30 miles per hour. The only avenue of escape for the defend-

ant from liability was that the jury in their unguided consideration should conclude the rapid speed of the car was not the proximate cause of the accident. It will be observed that this instruction covers the entire case and leaves only one condition from which the jury may not find for the plaintiff, viz., that the running of the car faster than the speed limit was not the proximate cause of the accident which resulted in the deceased's death. The instruction gave no definite definition of proximate cause, and stated no facts which could possibly aid the jury in determining the only issue left open to them, whether or not the excessive speed at which the car was going was the proximate cause of the accident. Defendant below had pleaded contributory negligence on the part of the deceased as a defense to the action, but this was in no wise called to the attention of the jury. In Bashfield's Instructions to Juries, sec. 391, p. 911, it is said:

"An instruction which attempts to cover the whole case, and authorizes a finding for one party or the other, according as the jury may determine certain facts, is erroneous if it omits any material issue, and the error is not cured by another instruction separately submitting the omitted issue."

The doctrine announced by Mr. Bashfield is supported by the following authorities:

"When contributory negligence is relied on in defense of an action for wrongful injury or death, a hypothetical instruction, directing a finding in favor of plaintiff, which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous, nor can such error be cured by other instructions given in behalf of either party." *McVey v. St. Clair Co.*, 49 W. Va. 412, 38 S. E. 648.

"When contributory negligence is relied on in defense of an action for wrongful injury or death, a hypothetical instruction, directing a finding in favor of plaintiff, which omits any reference to the facts tending to establish contributory negligence, and entirely ignores such defense, is erroneous. Nor can such error be cured by other instructions given in behalf of either party."

*McCreery, 'Adm'x, v. Ohio River R. Co.,* 43 W. Va. 110, 27 S. E. 327.)

"In an action against a street railroad for injuries to one struck by a car while crossing a street, an instruction that if defendant's servant did not have the car under control, and the injuries were caused by defendant's negligence, plaintiff was entitled to recover was erroneous as ignoring the question of contributory negligence." (*Solomon v. N. Y. Ry. Co.,* 50 Misc. Rep. 557, 99 N. Y. Supp. 529.)

Defendant in error contends that, if the court committed error in instruction No. 11 by omitting to submit in connection therewith the defense of contributory negligence, such error was cured by the giving of instruction No. 17 as follows:

"If you believe from the evidence that plaintiff's husband failed in any respect to use that degree of care which an ordinarily careful and prudent person would have used under the circumstances, and that had he used such care the accident would not have happened, then such failure was contributory negligence, and plaintiff herein cannot recover unless you further believe from the evidence either that before the accident happened plaintiff's husband ceased to be so negligent at a time when, by the exercise of due care on the part of the defendant, the accident could have been avoided, or unless you believe from the evidence that the defendant's motorman, after seeing the dangerous situation of the deceased and realizing that an accident was probable, knowingly failed to use some means which he had at hand and could have used, and the use of which would have avoided the accident."

And in support of this contention counsel quotes from paragraph 9 of the syllabus in the case of *Traver v. Spokane Street Ry. Co.,* 25 Wash. 225, 65 Pac. 284, which reads as follows:

"An instruction that, if defendant's car was running at a prohibited rate of speed, the jury would be justified in finding defendant guilty of negligence, and if such negligence caused the injury complained of the verdict should be for plaintiff, unless he was guilty of contributory negligence, was not erroneous, as

misleading the jury, when taken in connection with other instructions given that the verdict should be for defendant, though negligent, if plaintiff could have avoided the injury."

And in which it was held there was no error, but in the instruction quoted the question of contributory negligence was plainly and expressly called to the attention of the jury, which was not done in instruction No. 11, given to the jury in the trial of the case at bar. If in this instruction the court, after stating the facts upon which the jury might find for the plaintiff, had added, as did the Washington instruction "unless the deceased was guilty of contributory negligence," and thereafter had followed with instruction No. 17, there would have been no ground for complaint by the defendant below.

Instructions 11 and 17, given by the court below, were conflicting, and were calculated to confuse, rather than direct the jury. In *Atlantic Coast Line R. Co. v. Caple's Adm'x*, 110 Va. 514, 66 S. E. 855, it is held:

"An instruction, in an action for a servant's death, which authorized recovery if defendant was negligent and such negligence proximately caused his death, but which omitted the question of contributory negligence, which was pleaded, and which the evidence tended to support, was erroneous. Error in an instruction in authorizing a recovery if a deceased servant's death was proximately caused by defendant's negligence, without mentioning contributory negligence, which was an issue, was not cured by an instruction given for defendant on contributory negligence, as the instructions were conflicting so that it could not be determined which controlled the verdict."

It is also held in *Payne v. McCormick Harv. Machine Co.*, 11 Okla. 318, 66 Pac. 287, quoting from paragraph 3 of the syllabus, as follows:

"The instructions of the court should clearly and intelligently set forth the law as applicable to the issues and evidence sub-

mitted, without being conflicting, contradictory, confusing, or misleading."

This was a suit in replevin based on notes and chattel mortgage given by Payne to the Harvesting Company, defended on the ground that the company agreed to keep the machine up and make it do good work, and that it had failed to do so. Chief Justice Burford of the Territorial Supreme Court, 11 Okla. 326, 327, 66 Pac. 289, held certain instructions given by the court were contradictory, misleading, and prejudicial to the rights of the defendant in that case. The cast reads as follows:

"The third instruction was to the effect that, if the plaintiff, at the time of the execution of the note and mortgage, in order to induce the defendant to sign the same, agreed that it would remedy any defects in the machine and make it do good work, and that the plaintiff failed to perform such agreement and remedy any such defects, then the plaintiff could not recover. This instruction was as favorable to the defendant as the evidence would justify, and is unobjectionable.

"The fourth instruction is open to criticism; it is as follows: 'If you believe from the evidence that the agreement between the plaintiff and defendant was that the defendant was not to keep the machine unless it complied with all the conditions of the sale, and that the defendant was to have the privilege of returning said machine if it did not so comply with the conditions of said sale, then, if the defendant was not satisfied with the machine, it was his duty to return it within a reasonable time, and if he did not do so, he will be held to have elected to keep the machine and pay for it at the agreed price.' This instruction ignores the only defense that was made in the case, and is contradictory of the law as stated in instruction No. 3.  *  *  * We think this instruction was calculated to mislead and confuse the jury and was therefore, prejudicial to the defendant."

Counsel for plaintiff in error strenuously insist that the court committed reversible error in instruction No. 10 to the jury, as follows:

"If you believe from the evidence that the deceased placed

himself in a dangerous position, yet if the motorman, or other employee in charge of defendant's car, saw, or by the use of that degree of car which all the circumstances required, could have seen, that the said Milam was in a place of danger, or approaching a place of danger, upon or near the tracks of the defendant, and that the said Milam was unconscious of the danger from defendant's approaching car and appeared not to hear the sounds or signals of its approach or see the car, and that thereafter the servants in charge of defendant's car might have avoided the accident and injury to the deceased by the exercise of reasonable care, checking the speed of said car and getting the same under control, but that such servants negligently failed to do so, then such negligence of defendant's servants would be deemed the proximate cause of the injury, notwithstanding such antecedent negligence on the part of the deceased."

Complaint is also made of instructions 3, 4, and 9, but we do not consider it necessary to consider these instructions 3, 4, 9, and 10, since the case must be reversed on prejudicial error growing out of instructions Nos. 11 and 17.

It is also contended by defendant in error that because of paragraph 5 of the instructions which defined proximate cause, it was not necessary again to tell the jury what constituted the same in instruction No. 11, and, further, that the evidence in this case invoked the doctrine of "discovered peril" and "last clear chance" which entirely eliminated the question of contributory negligence, and that proper instructions were given by the court presenting the law of this doctrine. But the answer to this contention is that the jury alone can eliminate the defence of contributory negligence. Section 6, art. 23, (section 355, Williams'), Const. Okla., provides:

"The defense of contributory negligence or of assumption of risk shall in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

Under this constitutional rule, it is the duty of the trial

court in every case where there is evidence which, if true, tends in any degree to show contributory negligence, to present that defense and issue to the jury in clear and unambiguous instructions, and failure to do so will be reversible error. The question of contributory negligence was clearly an issue under the evidence in the trial below.

By instruction No. 11 (in view of the undisputed evidence as to speed limit) the jury are practically told that at the time the deceased was struck, the speed at which the car was being operated constituted negligence on the part of defendant's servant, the motorman, and that if such negligence was the proximate cause of the accident, to find the plaintiff, without further telling them therein plaintiff could not recover if deceased was himself guilty of contributory negligence. Held error, for which the case must be reversed.

It is useless to consider the other assignments, since the errors, if any therein complained of, will not likely occur on another trial.

For the errors above stated, the judgment of the trial court is reversed and the case remanded for a new trial.

All the Justices concur, except

KANE, C. J. (dissenting). I cannot concur with my Brothers in the reversal of the judgment rendered by the court below. Whilst I have no desire to be classed among the "judicial modernists," I am not in favor of keeping the law of to-day tied to the law of a hundred years ago after it has been unleashed by the legislative department. Section 6005, Rev. Laws 1910, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or

rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This statute is entirely ignored in the majority opinion. The judgment is reversed solely "on the ground of misdirection of the jury," but the opinion is quite silent as to whether "in the opinion of the court, * * * after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." In my opinion, after an examination of the entire record, it does not appear that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. Moreover, by charge No. 17 the jury was correctly instructed as to the duty of the deceased to use that degree of care which an ordinarily careful and prudent person would have used in the circumstances, and the consequences of a failure to exercise such care upon the plaintiff's right to recover. If instruction No. 11, upon which the reversal is based and instruction No. 17 defining contributory negligence, and the last clear chance were consolidated into one instruction and given by the trial court, we then would have a fair conservative statement of the law governing the points involved and probably the judgment would not have been reversed. In my judgment, appellate courts should not be hypercritical as to the form or style and arrangement of instructions given by trial courts. If as a whole they are reasonably clear and unambiguous and state the law with substantial fairness, that is all that should be required of them. Since a very early day the rule in this jurisdiction has been that:

"It is not required that the entire law of the case shall be

stated in a single instruction, and it is therefore not improper to state the law, as applicable to particular questions, or particular parts of the case, in separate instructions, and if there is no conflict in the law as stated in different instructions, and all the instructions considered as a series present the law applicable to the case fully and accurately, it is sufficient." *A., T. & S. F. Ry. Co. v. Marks,* 11 Okla. 82, 65 Pac. 996; *Snyder v. Stribling,* 18 Okla. 168, 89 Pac. 222; *Grant et al. v. Milam,* 20 Okla. 672, 95 Pac. 424.