**CLEMENTS, Adm'r, v. ATCHISON, T. & S. F. RY. CO.**

No. 16295—Opinion Filed Nov. 9, 1926.

Rehearing Denied March 1, 1927.

1. **Railroads—Extent of Right of Precedence at Highway Crossings—Safety of Travelers.**

The railroad's right to take precedence in the use of a public highway crossing is made to depend upon the exercise of that degree of care for the safety of the traveler on the public highway, under all of the circumstances and conditions relating to the time and occasion, which a reasonably prudent person would have shown for the safety of another in a like situation.

2. **Same—Duty of Travelers to Exercise Care at Crossings.**

An obligation rests upon the traveler on a public highway, who is about to pass over a railway crossing, to exercise that degree of care for his own safety, under all of the circumstances and conditions relating to the time and occasion, which a reasonably prudent person would show for his own protection in a like situation.

3. **Same—Action for Negligent Death of Traveler—Judgment for Defendant not Sustained.**

Record examined; held, to be insufficient to support judgment for the defendant.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; Tom G. Chambers, Judge.

Action by Bell Clements, administratrix of the estate of C. A. Clements, deceased, against the Atchison, Topeka & Sante Fe Railway Company for damages on account of the wrongful death of her husband. Judg-

ment for defendant, and plaintiff appeals. Reversed and remanded.

Ledbetter, Stuart, Bell & Ledbetter, Barrett & Works, and J. S. Harris, for plaintiff in error.

Rainey, Flynn, Green & Anderson, for defendant in error.

Opinion by STEPHENSON, C. The plaintiff and her husband lived in the town of Belen, N. M., where he was employed in the railroad shops of the Atchison, Topeka & Sante Fe Railway Company. The public highway, over which the plaintiff's husband traveled to and from his work in a Fo-d touring car, ran in an easterly and westerly direction, crossing the main north and south railway line of the defendant about 100 yards west of the plaintiff's home. There was an irrigation ditch parallel to the railway line, and situated either on or along the railway right of way, which crossed the public highway; an irrigation ditch was situated on the north side of the public highway between the home of the plaintiff and the railway crossing, which was flumed over the north and south irrigation ditch at the intersection near the railway crossing. A row of cotton wood trees, standing from 15 to 20 feet apart, was situated along the north side of the public highway between plaintiff's home and the railway crossing. The public highway was about 3 1-2 feet lower than the top of the banks of the irrigation ditch which paralleled the highway. The public highway passed over the bridged irrigation ditch paralleling the right of way about 50 feet from the railway crossing, and then ascended an embankment over the railway. The defendant introduced a photograph in evidence which showed a part of the bridge over the irrigation ditch, and a passenger train north of the crossing, headed south. The entire engine of the train was almost concealed from view by vegetation standing at a greater height than the locomotive. The plaintiff testified that sunflowers about five or six feet tall were growing in the irrigation ditch bank and along the right of way at the time of the accident, on June 20, 1922; that branches of the cotton wood trees met in the space between the trees, and reached to a distance of about 3½ or 4 feet from the ground. Some of the witnesses for the plaintiff testified that a traveler on the public highway, traveling west over the crossing, did not have a clear view of a train approaching from the north, until he reached a point about 30 or 40 feet distant from the crossing. The evidence of the defendant contradicted that of the plaintiff

on the material points. The plaintiff testified that her husband came from the shops on the west side of the railway, in a Ford touring car, to his home for dinner each day, and that a passenger train came from the north over the crossing usually about 12:30 p. m. before they finished dinner; that on June 20th, her husband came home for dinner at the usual time, and brought her brother with him; that while they were eating dinner, about 12:30 p. m., she heard a train coming from the north over the crossing. They completed dinner, and the husband and brother got into the car in the backyard, and started on the return journey, west over the public highway and crossing, to the shops, about 12:40 p. m. The witness then went out in the yard and started out onto the public highway; that a passenger train came from the north over the crossing, traveling at a speed of about 40 or 50 miles per hour. She heard a collision on the crossing and ran to that point, arriving there at about the time D. M. Torres, who lived about 150 feet away, reached the crossing. Torres later went into the employ of the defendant in its shops, and was in the service at the time of this trial. He testified that he did not hear the whistle or bell sounded for the crossing, but did hear the collision. The witness testified that the usual time of the passenger train's arrival at Belen was 12:32 p. m. The plaintiff testified that the car in which her husband was riding was totally destroyed, and that the body of her husband was thrown several yards south onto the right of way. The body of her brother was lodged on the pilot beam and carried to the station where it was removed from the engine.

The court properly sent the case to the jury which returned a verdict for the defendant. The plaintiff has perfected her appeal to this court, and among the several assignments of error, the plaintiff complains of several paragraphs of the court's instructions to the jury. Part of paragraph No. 16 of the court's instruction reads in the following language:

"He is required to look for a train and to continue to look until he reaches the crossing and is required to listen and if there are attendant conditions, such as obstructions to the view, he is then required to look and listen at an appropriate and safe distance before attempting to cross the railroad track."

The first part of the quoted instruction assumes that the view of approaching trains is unobstructed, and that approaching trains may be seen by travelers on the public highway, who use their senses of sight and hearing. In this situation the jury was instructed that it is the duty of the traveler to look out for trains, and to continue the exercise of such precaution for his own safety while approaching and passing over the crossing. It follows that the breach of such duty, which is the proximate cause of an injury, would deny plaintiff the right to recover for resulting damages. The latter part of the instruction takes into consideration the existence of obstructions to the traveler's view of the approaching train, which in turn would obstruct the view of those in charge of the train. In this situation, the jury is instructed that it is the duty of the traveler to look and listen for the train at an appropriate and safe distance from the crossing before passing onto it. Paragraph No. 12 of the court's instructions reads in the following language:

"You are instructed that a railroad passenger train is an instrument of public commerce; that the public and public exigency demand and require great speed in the operation of such trains; that such trains cannot be stopped or slowed up at every public road crossing; that the railway company is entitled, under the safeguards provided by law, to operate such trains at great speed, and at the speed necessary and customary in performing the public service for which they are designed."

The jury was instructed that the defendant was required and entitled to operate its trains at a great speed in the performance of its transportation service, and at the necessary and customary speed to perform the service for which they were designed. The instruction makes no distinction between a straight line of railway over a level prairie and that over a crossing; between railway crossings of slight and considerable travel; between sparsely settled and congested centers of population. An engine may be designed to pull a passenger train at the rate of 60 miles per hour, and safely do so over a track unfrequented by persons, but it does not follow that it may lawfully make the same rate of speed over a railway crossing frequently used by the public as a passageway.

It is not practicable for the court to state, as a general rule, the particular acts required on the part of the railway to constitute ordinary care on the part of the latter for the proper safety of the traveler on the public highway crossing, or to state the particular acts required of the traveler for his own safety. The duties resting with each party depend on the conditions and circumstances relating to each case.

The jury may have assumed that the unlimited instruction of paragraph No. 12 required the traveler under instruction No. 16, to look and listen from a place, in a situation, that would not subject the traveler to the danger of a collision on the crossing. In cases of obstructions, the effect of the two instructions was to place the burden of avoiding a collision mainly on the traveler on the public highway. A public highway crossing creates the right of joint use between the railway and travelers over the highway; neither can use the crossing to the exclusion of the other, except in the exercise of such use, according to the degree of prudence that a reasonably prudent person would exercise for the ordinary safety of another in like situation. The right, or use, is mutual, in that each is required to use reasonable care for the safety of the other; consequently, mutual obligations in respect to use are owing one to the other, and for a breach of the rights and duties owing the traveler, a right of action arises in favor of the injured party.

The jury may have understood the phrase "to ascertain whether a train is approaching and to wait for the train and let it pass," to mean that the obligation resting on the traveler in the exercise of ordinary care, meant that the burden rested on the traveler to discover the approaching train under all circumstances. The jury had already been told that the train could run at a high rate of speed and that it was not required to slow up for every crossing. The jury may have concluded that the court meant by "ordinary care" that the traveler should discover the approach of the train and wait for the train to pass without regard to speed, obstructions, or conditions about the crossing.

Then followed this language in instruction No. 14:

"The train under the law has the precedence to the right of way, and those approaching a crossing or about to cross the railway track, are bound to exercise ordinary care and diligence to ascertain whether the train is approaching."

The effect of the several instructions was to tell the jury that the train took precedence in the use of a crossing, in every instance, against the use by a member of the traveling public, without regard to the nature, situation, and condition of the crossing. This may or may not be true, according to the particular circumstances of the case. The right of precedence depends on the railway exercising that degree of care for the safety of a traveler, which an ordinarily prudent person would exercise for the safety of

another, under like circumstances. The apparent situation of the traveler, the obstructions which might affect the vision of both parties. and the weather conditions, would enter into the determination of the question of precedence. If the application of this rule to the particular case gave precedence to the railway, it would not be liable for an injury to the traveler; otherwise it would be liable. There were three questions of fact to go to the jury; whether according to the evidence, in the operation of its train over the crossing, the railway showed that degree of care for the safety of plaintiff's decedent, which an ordinarily prudent person would have exercised under like circumstances and conditions, affecting the crossing at the time of the accident; whether plaintiff's decedent was guilty of contributory negligence in failing to use that degree of care for his own safety which an ordinarily prudent person would have shown under like circumstances and conditions; the extent of damages suffered by the plaintiff, if the jury found that the defendant breached a duty owing to plaintiff's decedent. Whether the railway was entitled to precedence in the use of the crossing on this occasion, was a question of fact for the jury, to be determined from all of the evidence, by the application of the foregoing rules. Grand Trunk Ry. Co. v. Ives. 144 U. S. 408, 36 L. Ed. 485; B. & O. R. R. Co. v. Griffith, 159 U. S. 603. 40 L. Ed. 278.

Similar instructions were disapproved by the Supreme Court of the United States in the case of Continental Improvement Co. v. Stead, 95 U. S. 161, and are opposed to the rules applied by this court in the cases of St. L. & S. F. Ry. Co. v. Rundell, 108 Okla. 132, 235 Pac. 491; A., T. & S. F. R. Co. v. Bratcher, 99 Okla. 74, 225 Pac. 941; M., K. & T. R. R. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753.

It cannot be said, as a matter of law, that it is the duty of a person approaching a railway crossing to stop before going thereon. M., K. & T. R. R. Co. v. Stanton, supra.

Other parts of the court's instructions correctly defined the rules applicable to the case, but we are unable to determine whether the jury followed the instruction we have referred to herein, or the correct instruction, or considered the latter instructions with those improperly defining the rules. It was said by this court in the case of Petroleum Iron Works Co. v. Bullington, 61 Okla. 311, 161 Pac. 538, that:

"The jury is not supposed to know when the court correctly or incorrectly states the law, and it is prejudicial error for the court

to give conflicting instructions to the jury, and thus lead the jury to decide on conflicting principles of law."

The conclusions reached dispose of objections to other instructions.

The cause is reversed and remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. p. 924; 22 R. C. L. p. 988; 4 R. C. L. Supp. p. 1481. (2) 33 Cyc. pp. 981, 983. 22 R. C. L. p. 1014. (3) 4 C. J. p. 1164, §3181.