ST. LOUIS-S. F. RY. CO. et al. v. THOMPSON.

No. 19081. Opinion Filed May 28, 1929.

Rehearing Denied Oct. 29, 1929.

E. T. Miller and Cruce & Franklin, for plaintiffs in error.

Anglin & Stevenson and Forrest M. Darrough, for defendant in error.

DIFFENDAFFER, C. The parties will be herein referred to as plaintiff and defendants, as they appeared in the trial court.

Plaintiff, Ida Thompson, brought this action in the district court of Hughes county, in which she sued the defendants for damages for the wrongful death of her husband, J. B. Thompson. She stated in the petition: That she was the widow of J. B. Thompson, who died while a resident of Hughes county, Okla., on the 12th day of April, 1926; that no administrator of the estate had been appointed, and that she brought the action for the benefit of herself and for the benefit of Albert Thompson, minor child of the deceased, J. B. Thompson. The death of Thompson was caused by an automobile in which he was riding being struck by a south-bound passenger train of defendant at a highway crossing about two miles north of Holdenville. Defendant Thornton was the engineer in charge of and operating the locomotive.

The petition alleges that at the place where the highway crosses the railroad track, where the accident occurred, the railway company' track is in a deep cut—the highway going down from the east (the direction from which deceased approached the track) at a sharp grade, angling across the track: that there is a steep bluff or embankment, some 20 to 30 feet high, on the north side of the highway extending eastward more than 150 yards; that, at the time of the accident, there was on said embankment a heavy growth of weeds and timber obstructing the view of travelers coming from the east; that the obstruction had existed for several months; that about a quarter of a mile north of the crossing, the railway track makes a sharp curve to the west, so that a traveler on the highway approaching said crossing from the east could not see a train coming from the north by reason of the curve and the obstruction mentioned.

It was then alleged that defendant Thornton had been, for many months prior to the accident, operating a locomotive over said tracks, and that both he and the defendant company knew the dangerous character of the crossing. The negligence charged was:

**144**

"(a) In neglecting and failing to sound a whistle or ring the bell of said locomotive, at least 80 rods north of said crossing, as required by law.

"(b) In neglecting and failing to sound other warnings as should have been sounded and given taking into consideration the character and condition of the crossing at the point in question.

"(c) In propelling said locomotive and train over said crossing at an unreasonable and excessive rate of speed, to wit, 50 miles an hour, especially in view of the conditions existing at said crossing, which conditions were known to the defendants and both of them.

"(d) In that the defendant, Frank Thornton, operating the locomotive by which the said train was drawn, carelessly and negligently failed and neglected to maintain a lookout in approaching said crossing, and failed and neglected to slacken the speed of said train, and failed to give warning of the approach of said train, or to exercise any caution to avoid a collision with the said automobile driven by said J. B. Thompson, deceased."

Defendants filed separate answers, each being a general denial, and alleging that if deceased was injured at the time and place alleged, his injury was due to his own negligence and carelessness, and not to any negligence and carelessness of defendants; and further that if defendants were negligent, which is not admitted, the negligence and carelessness of deceased contributed to that of defendants, and without which contributory negligence, the injury would not have been sustained. Plaintiff replied by general denial.

The issues, as thus joined, were tried to a jury, resulting in a verdict in favor of plaintiff against both defendants in the sum of $20,000, upon which verdict, after unsuccessful separate motions for new trial, judgment was rendered. From this judgment and order overruling the motion for new trial, defendants appeal.

There are seven assignments of error: The first being that the court erred in overruling the defendants' motion for new trial. The second and third assignments go to the same question, and are submitted under the proposition that plaintiff could not prosecute this suit for the benefit only of herself and one child, there being two other living children who might have cause of action for the death of deceased. As heretofore stated, the petition made mention of but one child, and alleged that plaintiff was the widow, and that she brought the suit for the benefit of herself

and for the benefit of Albert Thompson, the minor child of J. B. Thompson, deceased.

At the trial, plaintiff testified that she had two other children, and upon cross-examination, when recalled in rebuttal, testified, as follows:

"Q. I believe you stated yesterday that you had some other children? A. Yes, sir. Q. Other than the minor child? A. Yes, sir. Q. How many other children have you? A. Two. Mr. Anglin: We object to that. The Court: Overruled. A. I have two living. Q. Two living. A. Yes, sir. Q. They are the children of Mr. Thompson? A. Yes, sir. Q. The deceased? A. Yes, sir. Mr. Franklin: That is all. Mr. Anglin: That is all. The Court: Q. Are they of age? Mr. Anglin: They are of age. The Court: Q. Are they of age? The witness: A. Yes, sir. The Court: Depend upon you for support? The Witness: A. No, sir. Mr. Anglin: That is all."

At the close of the evidence, defendants moved for a directed verdict, setting up as a cause therefor, among other things, failure of plaintiff to join the adult children of deceased, either as parties plaintiff or defendant. This motion was denied.

The trial court instructed the jury in part:

"You are instructed that if you find for the plaintiff in this case, the amount of your verdict must be limited to the actual pecuniary loss that the plaintiff and her minor child described in the evidence in this case has suffered by reason of the death of the deceased; and in this connection you are told that such damage is the amount of money, or other things of value, if any, that you believe from the evidence that the plaintiff and her said minor child has suffered by reason of the death of the deceased.

"And, in this connection, you are told that, in arriving at the amount of recovery, if any, is had in this case, that you cannot take into consideration any sympathy which you may feel for the plaintiff and her minor child, as this is a matter that cannot be considered by you; neither can you take into consideration the loss of society on the part of the plaintiff and her minor child of said deceased, but your verdict, if it is for the plaintiff must be based upon the actual amount of money or other things of value, if any, that the plaintiff and her minor child has suffered."

It is now contended that, under the statute of this state creating a cause of action for damages for death by wrongful act, section 824, C. O. S. 1921, as amended by chapter 125 Session Laws 1925, but one action is contemplated, and that the cause of action therefor cannot be divided; that is, damages for the same death cannot be sued

for in separate actions by various individuals who sustain damages thereby, and that, to adhere to this rule, we must reach one of two conclusions.: First, that the judgment of the court, with the petition limited to the behalf of the plaintiff and the one child, would be res adjudicata as to the two children not mentioned in the petition; or, second, that plaintiff would not be entitled to maintain the action upon the petition as thus limited.

Upon the proposition that but one action may be brought for damages for wrongful death, defendants cite Shawnee Gas & Electric Co. v. Motesenbocher, 41 Okla. 454, 138 Pac. 790. That case was where a mother in her own name sought to recover damages for the death of her son, who also left surviving him several brothers and sisters, without joining the brothers and sisters. While that case may not be said to be exactly in point, as there was no widow and no administrator, and the action was sought to be maintained under that part of section 825, C. O. S. 1921 (section 5282, Rev. Stat. 1910) which provided that, where no personal representative is or has been appointed and there is no widow, the action may be brought by the next of kin of the deceased, yet we think the rule therein announced applies where there is a widow. It was there held:

"Wilson's Rev. & Ann. St. 1903, sec. 4611 (Comp. Laws 1909, sec. 5945, Rev. Laws 1910, sec. 5281), contemplates but one action, and the same death cannot be sued for in separate actions by the various individuals sustaining damage thereby."

The same rule, in a similar case, was announced in Cowans v. A., T. & S. F. Ry. Co., 66 Okla. 273, 168 Pac. 1015. See, also, Okmulgee Gas Co. v. Kelly, 105 Okla. 189, 232 Pac. 428. Then assuming that in this kind of a case but one action can be brought, was it necessary that the petition mention all the children, and are those children not mentioned in the petition bound by this judgment?

Oklahoma Gas Co. v. Lukert, 16 Okla. 397, 84 Pac. 1076, is a case where it appears the widow brought an action in her own name for damages for the death of her husband. No mention appears to have been made of the children. It was urged that the children of deceased should have been made parties, or the case should have been brought for their benefit. It was held that the petition was sufficient, and that the defect, if any, not appearing upon the face of the petition, it was the duty of defendant to raise the objection by answer, and that no

objection being raised by the answer, the defect, if any, was waived.

The rule is well settled that an action of this nature is entirely statutory, and must be brought in the name of the person or persons to whom the right is given by the statute under which the action is brought. 17 C. J. 1262. In this state, the right of action is given, first, to the personal representative; and, second, in certain instances, to the widow, if any; and third, the next of kin. Section 825, C. O. S. 1921. If there be a personal representative, then neither the widow nor next of kin can bring the action. If there be no personal representative and there be a widow, then the next of kin cannot bring the action. Where there is neither personal representative nor widow, then the next of kin may bring the action, but, in that event, all the persons who are next of kin must be made parties to the action. We do not think it was necessary for plaintiff, in order to maintain the action, to mention the adult children, or any of them. But as we will presently show, failure to name or mention them would not prevent their participating in the distribution.

In Smith v. Cleveland, C. C. & St. L. Ry. Co. (Ind. App.) 117 N. E. 534, it was held:

"In an action for death by wrongful act, under Burns' Ann. St. 1914, par. 285, it is unnecessary to name the persons entitled to the damages; it being sufficient to allege and prove their existence."

In Jeffersonville, etc., R. R. Co. v. Hendricks, 41 Ind. 48, it was held:

"It is sufficient to allege in the complaint and prove on the trial, that there are persons who are entitled under the statute to the damages. It is not necessary to name the persons or to amend the complaint so as to state the fact, in the event of the death of any of those persons, leaving heirs, after suit brought."

In Budd v. Meriden R. Co., 69 Conn. 272, 37 Atl. 683, it was said:

"As these statutes give the right to sue to the executor or administrator, and direct in what way the sum recovered is to be distributed, it is obvious that a suit upon the statute may be brought by the executor or administrator without naming the heirs, or even averring that there are any."

In Conant v. Griffin, Adm'r, etc. of Barber, Dec'd, 48 Ill. 411, it was held:

"The question as to who is the widow, or next of kin, only becomes important when the administrator is called upon to make distribution of the money received from the

judgment, if one is recovered, and is to be determined in the probate court."

In Archibald, Adm'rs, v. Lincoln Co., 50 Wash. 55, it was held:

"The complaint in this case does not allege that the action is prosecuted for the benefit of the widow and children, but they are named in the complaint, and any recovery will inure to their benefit by operation of law. The complaint is therefore sufficient."

From the foregoing authorities, it clearly appears that failure to mention one or more of the beneficiaries does not defeat the right to maintain the action where the plaintiff brings the action in a representative capacity.

In Shawnee Gas & Elec. Co. v. Motesenbocher, supra, it is pointed out that either the personal representative or the widow can bring the action in a representative capacity, and that, where the action is brought in a representative capacity and the deceased left a widow and children, the widow and children receive the entire recovery.

We think then that, where the action is brought by the widow in a representative capacity and a recovery had, no action may thereafter be brought for damages for the same death by an administrator, or by the next of kin, or any of them.

The mere fact that the widow in her petition attempts to limit the beneficiaries to herself and one minor child will not deprive other children, if any there be, of their right to participate in the distribution in a proper case.

In Mo. Pac. Ry. Co. v. Barber (Kan.) 24 Pac. 969, it is said:

"A judgment in favor of the personal representative of the deceased is a bar to any other action for the same cause. The distribution of the amount of the recovery is a matter to be determined by the probate court, out of which the letters of administration issue. It does not concern the railroad company."

In Pierce v. Conners, 20 Colo. 178, 37 Pac. 721, 46 Am. St. Rep. 279, it was held:

"The application of a parent to be made a party with the other parent to a suit to recover for the death of a minor child caused by negligence may be presented and granted at any time, even after judgment, or after review in the appellate court, for the purpose of protecting the interest which such parent may have in such judgment."

In the body of the opinion, it was stated:

"In this case, the mother made no application to be joined as a party in the lower court. It may be supposed, therefore, that she was then willing that her husband should sue for her interest as well as for his own. If this supposition be wrong, or if the mother now desires to have her equal interest in the judgment protected, she may apply therefor upon the remanding of this cause."

In Kelly v. Howard, 98 Miss. 534, 54 So. 10, in an action involving the distribution of the proceeds of an action theretofore brought by the widow without mentioning the children of the deceased, it was said:

"When the action is for the death of a husband or wife, the section provides that 'action may be brought in the name of widow for the death of the husband or by the husband for death of a wife,' etc., 'or all parties interested may join in the suit,' etc.; but if all parties interested do not join in the suit, and it be conducted in the name of the father or mother alone, or if all parties interested do join in the suit, and there is a recovery, and it be attempted to exclude any of them from their share of the proceeds by having the judgment entered up in the name of the mother or father, to the exclusion of the children, such action cannot affect their right. The statute fixes the interest of all parties, and nothing that the court can do can eliminate their interest.

"So far as the widow and children are concerned, they derive their title from the same source. If they be, in fact, widow and children of deceased, their rights are fixed by the statute beyond the power of obliteration by any court, or any officer of the court. All are plaintiffs in execution, with equal rights, and the sheriff has the same duty to each from the time he has notice. The very complication of the situation, viewed in connection with the statute, makes resort to interpleader necessary, and under it alone can the rights of all parties be properly ascertained and protected."

This doctrine was reaffirmed in Howard v. Kelly, Sheriff, et al., 111 Miss. 285, 71 So. 391.

In Foster v. Hicks, 93 Miss. 219, 46 So. 533, it was held:

'Under Code 1906, sec. 721, providing that, in an action for the death of a married man leaving a wife and children surviving him, the damages recoverable shall be distributed to the wife and children, it was not necessary for the widow to join her children in a suit for the husband's wrongful death; but, whether she did so or not, she could not exclude them from participating in the damages recovered, either by procuring the entry of judgment in favor of herself alone or otherwise."

At the close of the opinion, it was said:

"The statute fixes the interest of all the parties, and nothing that the court can do can eliminate their interest."

In Duzan v. Myers, 30 Ind. App. 227, 96 Am. St. Rep. 341, it was held:

"The fact that the complaint in an action for damages for death by wrongful act omits to name the children by a former marriage does not deprive them of the right to share in the damages recovered for the death of their father."

In the body of the opinion, the court said:

"The amount recovered in such an action is a trust fund in the hands of the administrator for the benefit of those who, under the statute, are beneficiaries, and constitutes no part of the general estate of decedent for the benefit of creditors or heirs generally. * * * Distribution of the funds received must be made in the same manner as personal property of decedent is distributed. * * * The action from which the fund in question was derived was prosecuted for the benefit of the widow (administratrix) and her three minor children. They alone were mentioned in the complaint. From this it is argued that the damages were necessarily confined to the pecuniary loss sustained by the persons mentioned, and were awarded for their benefit. The action was brought by the administratrix who was the widow of the decedent. The omission of the names of the children by the former marriage of the decedent was not unintentional, and such omission of itself ought not to deprive them of the right to share in the fund recovered. The injury to the widow and the children of the decedent forms the basis of damages. Had the children of the first marriage asked, in the action for damages, that their names to be set out in the complaint as beneficiaries, the court would have granted the request. The same question is here presented that would have arisen had their names appeared in said complaint."

In Oyster v. Burlington Relief Dpt., etc., 65 Neb. 789, 91 N. W. 699, 59 L. R. A. 291, it was held:

"A judgment recovered by an administrator under the provisions of Neb. Comp. Stat. chap. 21, sec. 2, is for the exclusive benefit of the widow and the next of kin of such deceased person, and the fact that the administrator, in his petition for damages, fails to name all the legal beneficiaries provided for in this act, will not bar any legal distributee not named in his petition from receiving his distributive share of the judgment recovered."

It appears clear, from the foregoing authorities, that we must reach the conclusion that the judgment in this action upon the petition, limited as it was, is nevertheless a bar to any other action by the children of deceased not named in the complaint, and, if final, becomes res adjudicata as between these children and the defendants, but that they are not barred from sharing in the distribution upon proper proceedings, if they so desire.

There was no error in overruling the motion for a directed verdict.

Assignment No. 3 is that the trial court erred in its instructions to the jury. Under this assignment, several instructions are complained of. It is first asserted that the court erred in submitting the question of whether or not defendants should have maintained signaling devices, warning devices, or other means of warning at the crossing as not being covered by plaintiff's petition.

The instruction complained of is No. 9, which is:

"You are further instructed that if you believe by a preponderance of the evidence that the railroad crossing where the train of the defendants and the automobile being driven by the deceased collided, and which collision caused the death of the deceased, was an unusual dangerous crossing, it was the duty of the defendants to employ such means as was reasonably necessary, considering the character of the crossing, to warn travelers of the approach of any train approaching said crossing; and in this connection you are instructed that if you find by a preponderance of the evidence that at the place the train struck the automobile in which the deceased was driving was at the time an unusual, dangerous crossing, it is for you to say whether or not the means employed by the defendants were of such a nature as to warn the deceased of the approaching train to avoid injury or death while crossing said track."

We do not think this instruction is such that the jury could understand that they were to consider the fact that no signaling device was maintained at the crossing, or that no flagman was stationed there, as negligence. The jury was merely told that if they found, from a preponderance of the evidence, the crossing was an unusually dangerous crossing, then it was the duty of the defendants, in addition to the statutory duty of sounding the whistle and ringing the bell in approaching such crossing, to use such other means as were reasonably necessary, considering the character of the crossing, to warn travelers on the highway of the approach of any train, and were then told that it was for the jury to determine whether the means employed under the evidence in

the particular case were of such nature as were reasonably necessary. It has been held by this court that the statute which requires a railroad company to give certain signals at highway crossings was not intended to furnish a standard by which to determine in every case whether or not such company had failed to discharge its duty in respect to giving sufficient warnings to the traveling public of the approach of its trains. It was intended rather to prescribe the minimum of care which must be observed in all cases. Mo. Pac. R. Co. v. Merritt, 104 Okla. 79, 230 Pac. 513; M., K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753.

It must be borne in mind that the petition, in addition to alleging failure to sound a whistle or ring the bell at least 80 rods north of said crossing, as required by law (that is, give the statutory warning) alleged negligence in failing to sound other warnings as should have been sounded and given, taking into consideration the character and condition of the crossing at the point in question. In M., K. & T. Ry. Co. v. Stanton, supra, Mr. Justice Pitchford, speaking for the court, in discussing a condition very much like the one here, said:

"It is obvious the place was one of danger, and the employees of the railroad company must be presumed to have known the facts, and the mere compliance with the statute in sounding a whistle or ringing a bell would not justify those having charge of the train in omitting other reasonable and necessary precautions. Because the statute has imposed certain duties, it does not follow that this is all that might be required at the particular time and place. As we have seen, the evidence was conflicting as to whether the whistle was sounded or the bell was rung as required by the statute."

The rule as to the duty of the railway company, under such circumstances, is stated in the fourth paragraph of the syllabus as follows:

"Where a crossing is unusually dangerous because of its peculiar construction and situation, it is the duty of the railway company to exercise such care and take such precautions as the dangerous nature of the crossing requires."

The instruction complained of, in effect, explained this duty to the jury, and then told them that it was for the jury to say whether under the evidence this duty had been performed. The use of the phrase, "any train approaching said crossing," is perhaps inaccurate. The instruction, as applied to the pleading and evidence, should have been limited to this particular train, being drawn by the locomotive operated by and in charge of defendant, Thornton, since he was not chargeable with the acts of any other engineer in operating any other train, but we do not think the jury could have been misled by the use of the phrase, so as to understand that the court meant to tell them that it was the duty of defendants to provide signaling devices, or any other means, so as to warn passengers of the approach of all trains. The error, if any, in this instruction is not sufficient to require a reversal of the case.

Defendants complain of error in giving instruction No. 8, which, after stating the statutory duty as to sounding a whistle or ringing a bell, told the jury:

"And for every neglect to ring the bell or blow the whistle, the defendant shall be liable for all damages which shall be sustained by any person by reason of such neglect; and, in this connection, you are instructed that if you find and believe by a preponderance of the evidence that the defendants, as the train approached the crossing where the train collided with the automobile in which the deceased was driving, failed to ring the bell or sound the whistle, and that such failure and neglect was direct and proximate cause of the death of the deceased, it would be your duty to find for the plaintiffs, assessing the amount of their recovery at any sum, not to exceed $50,000, the amount sued for."

And, also, of instruction No. 10, which reads:

"You are further instructed that if you find by a preponderance of the evidence that on the 12th day of April, 1926, the defendants in the operation of their train carelessly and negligently approached the crossing where the deceased was killed, in that said defendants failed to ring the bell or sound the whistle to warn the deceased of their approaching train, and that the carelessness and negligence upon the part of the defendants to perform this duty was the direct and proximate cause of the death of deceased, then, in that event, it would be your duty to find for the plaintiffs."

The alleged error was the omission of the element of contributory negligence from each of these instructions.

In support of their contentions, defendants cite Hines, etc., v. Dean, 96 Okla. 107, 220 Pac. 860, where it was held reversible error to give an instruction designated therein as No. 7, which is as follows:

"The court instructs the jury that if you conclude that the defendant failed to give the signals required by the statute and hereinbefore explained to you, as a matter of law, the plaintiff would be entitled to re-

cover such damages as you may conclude she has sustained, unless you further find from the evidence in the case that the plaintiff was guilty of negligence which contributed to the injury."

The error in that instruction was held to be that it did not advise the jury that it was necessary that the failure to perform the statutory duty relative to giving signals must have been the proximate cause of the injury. That is to say, it omitted one of the elements necessary for plaintiff to make a prima facie case.

It was further held that this error was not cured by other instructions, which did include this element.

The position taken by defendants was upheld in the case of Oklahoma Ry. Co. v. Milam, 45 Okla. 742, 147 Pac. 314, a case wherein the exact question was presented. It was there held:

"In an action against a street railway company to recover damages for the death of a person killed by the railway company's car within the city limits, and wherein contributory negligence on the part of the deceased is pleaded as a defense, and there is evidence tending to sustain such defense, an instruction which ignores the defense of contributory negligence and tells the jury that the operation of defendant's car, at a rate of speed exceeding the city speed limit, is negligence per se, and, if such negligence is the proximate cause of the injury, the defendant will be liable, is reversible error."

And in the second paragraph of the syllabus in that case, it would further held:

"Such error was not cured by another instruction which tells the jury, in substance, the defendant will not be liable if the deceased was guilty of contributory negligence in going upon the defendant's car track, in front of the approaching car, which struck him, unless the doctrine of the last clear chance applies.

"The two instructions are confusing, and it is uncertain which the jury will follow, and when the evidence is conflicting, a verdict and judgment for either party, under such conflicting instructions, should be reversed."

But this case and the rule therein announced has been expressly overruled and renounced in Ponca City Ice Co. v. Robertson, 67 Okla. 86, 169 Pac. 1111, and in C., R. I. & P. Ry. Co. v. Johnson, 71 Okla. 118, 175 Pac. 494.

In Ponca City Ice Co. v. Robertson, supra, it was said:

"It is a general rule upon reason and experience that instructions must be considered as a whole and construed together, and that no particular one should be singled out to the exclusion of another, and that where instructions when taken together and considered as a whole fairly present the law of the case, and there is no conflict between the different paragraphs thereof, this will be sufficient."

And further:

"Neither was paragraph 6 erroneous because the court failed to call attention therein to the defense of assumption of risk. This defense was submitted in another paragraph, and, if correct, that was sufficient. In support of this assignment, defendants cite the previous decisions of this court in Oklahoma Railway Co. v. Milam, 45 Okla. 742, 147 Pac. 314, and C., R. I. & P. Ry. Co. v. Clark, 46 Okla. 382, 148 Pac. 998, in each of which cases instructions were condemned, because paragraphs thereof submitting plaintiff's theory of the case did not call attention to the defense of contributory negligence in connection therewith. The cases cited support defendant's contention, and if we adhere to that rule a reversal of this case would be necesssary. Upon a re-examination of the question, we are convinced that the above rule is correct, and the Milam Case and subsequent cases based thereon, in so far as they are in conflict with the rule here stated, should be and are hereby overruled."

And in the fourth paragraph of the syllabus it was held:

"Instructions must be construed as a whole and construed together, and it is not necessary that any particular paragraph thereof contain all the law of the case. It is sufficient, if when taken together and considered as a whole they fairly present the law of the case, and there is no conflict between the different paragraphs thereof."

It is then pertinent to inquire whether or not the defense of contributory negligence was correctly submitted by other paragraphs of the instructions.

By paragraph No. 5, the court instructed the jury:

"Contributory negligence is meant the doing of some act on the part of the deceased, which a person of ordinary care and prudence would not have done under the same or similar circumstances, or the failure of the deceased to do some act which a person of ordinary care would not have done under the same or similar circumstances, which act or omission upon the part of the deceased caused his death or contributed thereto."

No. 12 was:

"You are further instructed that if you find from the evidence that the deceased, J. B. Thompson, was guilty of contributory negligence at the time of the collision between

150

the train and the automobile, which negligence on the part of the deceased caused his death, or contributed thereto, then it would be your duty to find for the defendant."

No. 13 was:

"You are further instructed that it is the duty of the person about to cross a railroad track to make diligent use of his senses in order to ascertain if there is a train approaching, and it was the duty of deceased when approaching the track of the defendant railway company to look and listen for approaching trains before attempting to cross said track, and it was his duty to keep his faculties in active exercise, and not permit his attention to be diverted from the danger before him, and a violation of either of these duties on the part of the deceased is negligence."

In instruction No. 16, the court again referred to the acts of negligence on the part of defendant enumerated in the instructions, and told the jury that if it found defendant guilty of any or all of these acts of negligence, and that they were the proximate cause of the death of deceased, still plaintiff could not recover unless the jury should further find among other things that deceased was free from negligence in the premises. The latter part of this instruction is stronger in defendant's favor than the law warrants. When all of the instructions are read together, we think the jury must have understood that the rule as to defendant's liability, as stated in instructions Nos. 8 and 10, was limited by subsequent instructions to the effect that plaintiff could not recover if the negligence of deceased directly contributed to his death.

We think that these instructions, when read in connection with all the other instructions, fairly and correctly submitted the defense of contributory negligence, and thus brings the case fairly within the rule announced in Ponca City Ice Co. v. Robertson, supra, and that, taken as a whole, the instructions are not contradictory.

It follows that the contention of defendants in this regard cannot be upheld.

It is next contended that the court erred in refusing to give defendants' requested instructions Nos. 13 and 14. We are of the opinion that there was no error in refusing offered instruction No. 13, for the reason that the subject-matter thereof was sufficiently covered in the court's general instruction.

Instruction No. 14 offered by defendants was to tell the jury, in effect, that they could not return a verdict against the defendants or either of them by reason of the

condition of the crossing involved or by reason of the embankment, trees, underbrush, or any material obstructions which might have tended to obstruct the view of deceased as he approached the crossing for the reason that plaintiff was not seeking a recovery on account thereof. We think there was no error in refusing this instruction, for the reason that the court in its general instruction limited the acts of alleged negligence to failure to sound the whistle or ring the bell.

The court in instruction No. 9 did tell the jury that, if they found the crossing was an unusually dangerous one, it was the duty of defendants to use such means as were reasonably necessary, considering the character of the crossing, to warn travelers upon the highway of the approach of any train, and that it was for the jury to say whether or not the means employed were of such character as to warn deceased of the approaching train, but, by other instructions, the only act of alleged negligence submitted was failure to sound the whistle or ring the bell. The condition of the crossing was not an issue and not relied upon, nor was its condition alleged as an act of negligence.

It is next asserted that the court erred in refusing to instruct the jury regarding the "Oklahoma State Stop Law." The defendants requested and the court refused to give the following instruction:

"You are instructed that the evidence shows in this case that the railway company has erected at the crossing in question a large sign with the words, 'Stop—State Law' written thereon. You are told that this sign has been erected pursuant to a statute of the state of Oklahoma. In this connection, you are instructed that it was the duty of the deceased to have brought his automobile to a complete stop before crossing the defendant railway company's track, and a violation of this duty would be negligence."

There is some conflict in the evidence as to whether or not deceased did bring his automobile to a complete stop. There is positive evidence that he did. There is some evidence, though less positive, that he did not. So far as we know, this is the first time this direct question has been presented to this court. The law referred to is chapter 101, Session Laws 1925. The act consists of three sections. Sections 1 and 2 only are involved herein. The applicable parts thereof are:

"Section 1. It shall be unlawful for any person or persons driving or causing to be driven any motor driven vehicle in the state of Oklahoma to drive or cause the said

motor driven vehicle to be driven across or over any steam or electric railway track in the state of Oklahoma, without first coming to a complete stop. * * * That any person or persons violating any provision of this act shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than $5 nor more than $25."

"Section 2. Provided that the provisions of this act shall not be taken or construed to in any way change or modify the existing laws in connection with the trial of actions growing out of grade crossing accidents."

It is contended by defendants that, as section 1 of the act makes it unlawful for any person to drive a motor driven vehicle across any steam or electric railway track without first coming to a complete stop, it was incumbent upon the court to instruct the jury with respect to this duty imposed by the law, and, further, to tell the jury that violation of this duty by deceased would be negligence.

The general rule on this subject is clearly stated in 45 C. J. 969, and is in part as follows:

"In the absence of circumstances sufficient to justify or excuse such conduct, it is generally held that a plaintiff responsible for the violation of a statute designed to control the situation of the parties at the time the injury complained of was sustained cannot recover if such violation, concurring and co-operating with the negligence of defendant contributed to the injury as a proximate cause."

This court seems to be committed to this general doctrine as to actions other than those growing out of accidents at railroad crossings. In Schaff, Rec., v. Richardson, 119 Okla. 160, 250 Pac. 133, it was held:

"Where a plaintiff's own unlawful act concurs in causing the damage he complains of, he cannot recover compensation for such damage."

But with reference to the statute under consideration, we are confronted with a somewhat different proposition. It is necessary to consider the effect of section 1 of the act when read in connection with section 2 thereof.

The general rule of construction of statutes is stated in 35 Cyc. 1128, as follows:

"In construing a statute, the legislative intent is to be determined from a general view of the whole act, with reference to the subject-matter to which the language in question is found."

"It is a cardinal rule in the construction of statutes that effect is to be given, if pos-

sible, to every word, clause, and sentence. It is the duty of the court, so far as practicable to reconcile the different provisions, so as to make them consistent and harmonious, and to give a sensible and intelligent effect to each."

The office of a proviso is to restrain or modify the enacting clause, or of excepting something from its operation which would otherwise have been within it, or exclude some possible grounds of misinterpreting it, as by extending it to cases not intended by the Legislature to be brought within its purview; to restrain or modify the enacting clause, and not to enlarge it. 36 Cyc. 1161-62.

Keeping in mind these rules, it appears clear that by the provisions of section 2 of the act, it was the intention of the Legislature that the creation of the duty found in section 1 should not in any way change or modify existing laws in connection with trials of actions growing out of crossing accidents.

The law, as it existed at the time the act in question was passed by the Legislature, did not impose this absolute duty upon the driver of a motor driven vehicle, nor did the law at that time make such driver guilty of negligence as a matter of law, if he did not stop. In M., K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 Pac. 753, decided in 1920, it was held:

"It cannot be declared, as a matter of law, that it is the duty of a person approaching a railroad track at a crossing to stop before going upon the track. It is his duty to look and listen and to exercise such care as is commensurate with his surroundings to avoid the accident. There may be circumstances under which he should stop, but whether or not this is true depends upon the particular facts of the case, and whether he should stop or not is a matter for the jury to determine."

In Clements v. A., T. & S. F. Ry. Co., 124 Okla. 13, 253 Pac. 496, it was said:

"It cannot be said, as a matter of law, that it is the duty of a person approaching a railway crossing to stop before going thereon."

Reference to M., K. & T. Ry. Co. v. Stanton, supra, will disclose that the reason for the rule there announced was because of the provision of section 6, art. 23 of the Constitution, which provides:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

It is clear that the intention of the Legis-

lature, in enacting the proviso contained in section 2 of chapter 101, Session Laws 1925, supra, was that the law as it then existed relative to contributory negligence of one claiming damages for accidents at grade crossing over railway tracks should not be changed or in any way affected by the adoption of section 1 of the act.

We are further of the opinion that, as the provisions of section 6, art. 23, of the Constitution prohibited the court from saying as a matter of law that any particular act or omission of one claiming damages for personal injuries amounted to or constituted contributory negligence, the same in hibition would apply to the Legislature, and the provisions of section 6, art. 23 of the Constitution, would also prohibit the Legislature from declaring any act or omission to amount to or constitute contributory negligence.

Complaint is made in the brief of defendant of a certain improper remark or statement shown in the record to have been made by Mr. Anglin, counsel for plaintiff, in the course of his argument to the jury, which was: "Why don't they put up some signal blocks?" No assignment of error is contained in the petition in error based upon this alleged improper remark, but we have considered the same, together with the explanation of the remark, as made by Mr. Anglin in the record, and we do not think the remark or statement sufficiently prejudicial to require a reversal of the case upon that remark, had an assignment of error been based thereon. The remark was, we think, improper under the state of the pleadings, but we must consider the same in connection with the explanation made, which was to the effect that he only meant thereby to call the attention of the jury to the fact that defendant Thornton knew that there were no signal block, or devices, or anything of that kind, at the crossing, and that his, Thornton's, knowledge of that fact should be taken into consideration by the jury in determining whether or not he, Thornton, used that degree of care commensurate with the known dangerous nature of the crossing, that was required of him under the circumstances. With this explanation, which is apparently conceded to have been made, we do not think the statement could have prejudiced the jury to such an extent as to require a reversal, if at all. In this connection, it does not appear from the record that defendants' counsel asked the trial court to direct that the remark be withdrawn from the jury, or that the jury be directed not to consider same, or

that the trial court refused so to do. In the absence of such request and refusal, we hardly think the defendants are in a position to urge the error here.

In view of the whole record, we are of the opinion that there is no substantial error shown, and that the judgment should be affirmed.

BENNETT, HERR, JEFFREY, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (5) 22 R. C. L. p. 1005; 7 R. C. L. Supp. p. 760. (6) 14 R. C. L. p. 772; 4 R. C. L. Supp. p. 918; 5 R. C. L. Supp. 776; 6 R. C. L. Supp. p. 830; 7 R. C. L. Supp. p. 469. (7) anno, 1 A. L. R. 203; 41 A. L. R. 405; 3 R. C. L. Supp. 1301. See "Death," 17 C. J. §102, p. 1251, n. 46; §119, p. 1269, n. 54; §125, p. 1271, n. 73; §140, p. 1287, n. 48. "Trial," 38 Cyc. p. 1711, n. 19; p. 1779, n. 75.