## MISSOURI, K. & T. R. CO. v. STANTON.

No. 9273—Opinion Filed April 20, 1920.

(Syllabus by the Court.)

**1. Railroads—Care at Crossings—Duty of Traveler to Stop—Question for Jury.**

It cannot be declared as a matter of law that it is the duty of a person approaching a railroad track at a crossing to stop before going upon the track. It is his duty to look and listen and to exercise such care as is commensurate with his surroundings to avoid the accident. There may be circumstances under which he should stop, but whether or not this is true depends upon the particular facts of the case, and whether he should stop or not is a matter for the jury to determine.

**2. Same—Duty of Railroad—Warning by Bell or Whistle.**

Section 1430, Revised Laws of 1910, requires that a bell at least 30 pounds in weight, or a steam whistle, shall be placed upon each locomotive engine operated upon any railroad of this state, and that such bell shall be rung or such whistle sounded at the

distance of at least 80 rods from the place where the railroad shall cross any other road or street, and that the railway company shall be liable for all damages which shall be sustained by any person by reason of the failure of the railroad company to comply with the requirements of the statute. And when a locomotive is so equipped and the bell is rung or the whistle sounded, as required by the statute, then the railway company has discharged the duty imposed upon it by the statute with reference to the ringing of the bell or the sounding of the whistle, whether such signal is heard or not.

### 3. Same—Statutory Provisions—Intent.

The statute which requires a railroad company to give certain signals at highway crossing was not intended to furnish a standard by which to determine in every case whether or not such company had failed to discharge its duty in respect to giving sufficient warnings to the traveling public of the approach of its trains. It was intended rather to prescribe the minimum of care which must be observed in all cases.

### 4. Same — Care Required at Dangerous Crossings.

Where a crossing is unusually dangerous because of its peculiar construction and situation, it is the duty of the railway company to exercise such care and take such precautions as the dangerous nature of the crossing requires.

Error from District Court, Washington County; R. H. Hudson, Judge.

Action by Frank Stanton against the Missouri, Kansas & Texas Railway Company for damages for death of his two sons and for killing team and demolishing wagon., Judgment for plaintiff, and defendant brings error. Affirmed.

Clifford L. Jackson, W. R. Allen, and Rowland & Talbott, for plaintiff in error.

Leahy & Macdonald, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Washington county, Okla., by Frank Stanton to recover damages on account of the death of his two sons, who were killed by being struck by one of the trains of the railway company on a country highway crossing in Osage county, Okla. The suit is also for damages on account of the killing of two mules and the destruction of a wagon and harness.

The boys were driving the mules hitched to the wagon at the time of the accident. William Stanton was 19 years of age, and his brother, Ralph Stanton, 10 years of age. The two boys and one of the mules were instantly killed; the other mule died later, and the wagon was demolished. The acci-

dent occurred about 1 o'clock p. m. The track in the vicinity of the accident runs in a northeasterly and southwesterly direction; the public road in a general east and west direction. The train was moving south at the time of the accident, and was considerably late; some witnesses saying it was 40 minutes late, while others say it was an hour and 40 minutes late. These boys had for sometime lived in close proximity to the crossing, and, we are to judge from the evidence, were familiar with the same. The older boy was driving the team. There was no one close enough to notice exactly what the boys did before reaching the crossing with reference to looking and listening for the train, but they were casually noticed approaching by witnesses who were about 200 yards away.

The track approaching the crossing from the north, in which direction the train approached, is straight for a distance of 1,035 feet. Going further northward from the crossing and beyond this piece of straight track there is a slight curve to the west of one degree. The width of the right of way is 50 feet. The crossing whistling board for the crossing where the accident occurred is located 1,316 feet north of the crossing. The track is on a down grade for a mile or more approaching the crossing, and there is a natural elevation east of the track described as a mound or knoll. The highway along which the boys approached does not follow the section line to the track, but when it comes to this knoll turns southward and around the knoll and on to the section line on the track. The height of the knoll where the section line crosses it is from 12 to 14 feet, but at other places it is some higher, estimated by some of the witnesses about 25 feet at the highest point. The distance around the knoll from the point where highway deflects to the railway crossing is 420 feet. In the construction of the railway the west portion of this knoll has been cut away. The elevation of the knoll begins at about 100 feet north of the crossing and extends 650 feet north. The knoll itself measures 550 feet along the track. East of the knoll or mound the land is in cultivation between the railway and the public road, and there is some scattering timber near the right of way, and along the creek or water course, but not on the right of way.

There is some variation in the testimony as to the density of this timber, and as to what extent and for what distance the railway tracks and the approaching train can be seen by a traveler on the highway. However, we are satisfied from the evidence that

tne train and tracks are visible at different points until the traveler reaches this knoll, which for a time completely obstructs the view. In the construction of the road a portion of the knoll was shaved off; further than this nothing was done to form any obstruction to the view which did not exist in the natural formation of the land.

The plaintiff contends that as the train approached the crossing it was traveling at a speed of 50 or 60 miles an hour, and that there was a failure to blow the whistle or ring the bell as prescribed by statute, and the evidence is largely directed along that line. On the other hand, the defendant company introduced several witnesses who testified that the statutory signal was given and that the speed of the train did not exceed 40 miles an hour. The jury returned a verdict in favor of the plaintiff on account of the death of the older son for $1,000; on account of the death of the younger son, for $4,000; and on account of the destruction of the wagon and team, for $400.

The defendant assigns as error the refusal of the court to instruct the jury in accordance with instructions as requested by the defendant; and, second, error in giving to the jury certain instructions.

It is the contention of the railway company that under the facts as developed in the case the giving of the signals of the approach of the train as required by the statutes is the measure of duty which the railway company owed to these boys approaching this crossing. We cannot agree with this contention of defendant. Section 1430, Rev. Laws 1910, provides that a bell of at least 30 pounds weight or a steam whistle shall be placed upon each locomotive engine operated upon any railroad of this state, that such bell shall be rung or such whistle sounded at the distance of at least 80 rods from the place where such railroad shall cross any other road or street, and that the railway company shall be liable for all damages which shall be sustained by any person by reason of the failure of the railroad company to comply with the requirements of the statute. This statutory duty is required as to all crossings. and when a locomotive is equipped with such bell or whistle and the bell is rung or the whistle sounded as required by the statute upon the approach of the train to a railroad crossing, then the railway company has discharged the duty imposed upon it by the statute with reference to the ringing of a bell or the sounding of a whistle. This is true whether such signal is heard or not. The statute does not require the giving of such a signal of the approach of the train as will enable a person absolutely to ascertain its approach or avoid being injured.

The evidence is sharply conflicting as to whether or not the bell was rung or the whistle sounded. Some witnesses on the part of the plaintiff, standing 200 yards west of the crossing and in plain view of the same, testified that there was no whistle sounded for the crossing where the accident occurred, and that the bell was not rung. On the other hand, the engineer, the fireman, and other members of the train crew, together with other parties, testified that the crossing whistle was sounded at the whistling board for the crossing, and, further, there is some evidence that the bell was rung. This then became a matter entirely for the jury, and it was for the jury to say whether or not the signals had been given.

The defendant complains that the court erred in refusing to give the instructions requested by the defendant to the effect that if the conditions surrounding the crossing and the passage of a train thereon were such as to require a traveler, in the exercise of reasonable care, to stop, in addition to looking and listening, upon approaching the crossing, then a failure of deceased to stop constituted negligence on his part. We do not understand that it is a matter of law in this state that a person in approaching a railroad crossing must stop, in addition to looking and listening. Before the plaintiff was entitled to recover, the burden of proof was upon him to show by a fair preponderance of the evidence that the boys, at the time they were killed, were in the exercise of due care for their own safety, and were killed as the direct and proximate result of the negligence of the defendant company. The deceased and the company both had the right to use the crossing where the accident occurred. The law imposed upon both the duty of using reasonable and ordinary care to avoid accident and danger. If the deceased boys failed to exercise reasonable and ordinary care and precaution to avoid the accident—that is, such care and caution as reasonably prudent boys of their age, maturity, intelligence, and experience would be reasonably expected to exercise under the circumstances—then plaintiff was not entitled to recover; and if the defendant failed to use reasonable and ordinary care to avoid accident and danger on the occasion, then the defendant would be guilty of negligence. It is not the province of the court to particularize what acts shall constitute negligence, or what acts shall constitute ordinary care. This is a question solely for the jury. It is for the jury to say, from all the facts, the

circumstances, and the surroundings at the time, whether or not ordinary care and caution were used. It is true the statute requires a specific duty on the part of the railroad company as to the blowing of a whistle or ringing of the bell, but otherwise the court is positively prohibited from saying to the jury what acts shall constitute negligence in a given case.

It was the duty of the defendant company, as well as the deceased, to exercise care commensurate with the surroundings to avoid the accident, and if the circumstances were such as to require the deceased to stop— that is, if the evidence showed or disclosed that they knew the train was coming or that they heard the train and that they wantonly disregarded these warnings—then, in that event, the jury would, no doubt, have drawn the conclusion that it was their duty to stop; but this cannot be a question of law for the court; probably under these conditions no jury would have found that they were in the exercise of ordinary care and caution.

In Chicago, R. I. & P. R. Co. v. Baroni, 32 Okla. 540, 122 Pac. 926, error was predicated on the refusal of the court to give an unqualified instruction that the traveler should stop. The court held that it was not error to refuse to give such an instruction, as follows:

"We do not think it was error to refuse this instruction, as, in our opinion, it cannot be declared, as a matter of law, that it is the duty of a person approaching a railroad track at a crossing to stop before going upon the track. It is, of course, his duty to look and listen, and to exercise such care as is commensurate with his surroundings to avoid an accident, and there may be circumstances under which he should stop; but whether or not this is true depends upon the particular facts of the case, and we do not think it can be said, as a matter of law, under the facts in this case, that it was the plaintiff's duty to stop."

In the later case of St. Louis & S. F. R. Co. v. Model Laundry, 42 Okla. 501, 141 Pac. 970, the court said:

"We cannot say, as a matter of law, under the facts in this case, that it was the duty of Nadelhoffer to have brought the machine to a full stop for the purpose of looking and listening for an approaching train; and we are therefore of the opinion that the court did not err in refusing the requested instructions embodying that proposition."

33 Cyc. 1010, states the rule as follows:

"Although some cases seem to hold that it is the duty of a traveler to stop, as well as to look and listen, in all cases before going on a crossing, by the weight of authority it is not necessarily negligence on the part of one about to cross a railroad track to fail to stop, in addition to looking and listening for trains, unless under the existing circumstances he cannot listen without stopping; but whether such a traveler must stop, in addition to looking and listening, depends upon the facts and circumstances of each particular case, and so is usually a question for the jury."

To the same effect, see Chickasha Street Railway Co. v. Marshall, 43 Okla. 192, 141 Pac. 1172.

Instruction No. 3, given by the court, to which there is no exception, calls the attention of the jury to this contention, and is more favorable, if anything, to the defendant than to the plaintiff, and practically covers that requested by the defendant, and is as follows:

"You are instructed that the defendant has interposed a general denial to each of the counts of the plaintiff's petition, and, in addition thereto, alleges that, if the plaintiff's said sons, or either of them, or the plaintiff's mules were killed by the defendant, that the same was due to negligence and carelessness of the said William L. Stanton, and the said Ralph R. Stanton in failing to stop, look, or listen for approaching trains before attempting to cross over the defendant's track on said highway crossing, and in failing to take any precaution to ascertain whether engines and trains were approaching, and in failing to give due heed and attention to the surroundings, and in going in front of the moving engine and train of the defendant, and which negligence on the part of the said William L. Stanton and Ralph R. Stanton, the defendant alleges, contributed to their death and to the death of the said mules. This latter defense is what is commonly known as the defense of contributory negligence, and you are instructed that the burden of proof rests upon the defendant to establish this defense by a fair preponderance of the evidence."

Section 23, art. 6, of the Constitution of Oklahoma provides:

"The defense of contributory negligence, or assumption of risk, shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

In determining whether or not the defendant company was guilty of negligence in the operation of its train at the time and place of the accident, the jury was authorized to take into consideration the condition of the crossing and its surroundings, the condition of the adjoining lands with reference to the railroad, whether or not there were any natural or artificial obstructions, known to defendant, which would have prevented the boys from

seeing an approaching engine, whether or not the defendant's employes upon the engine in question sounded the whistle or rang the bell in the manner provided by the statute as the engine approached the crossing, the rate of speed at which the train was moving as it approached the crossing.

This case, in many particulars. is similar to the case of Continental Improvement Co. v. Joseph Stead, 95 U. S. 161, 24 L. Ed. 406. The opinion was delivered by Mr. Justice Bradley. We quote as follows:

"The judge refused to adopt the instructions framed by counsel, but charged, in effect, as follows: that both parties were bound to exercise such a care as, under ordinary circumstances, would avoid danger; such care as men of common prudence and intelligence would ordinarily use under like circumstances; that the amount of care required depended on the risk of danger; that, where the view was obstructed so that parties crossing the railroad could not see an approaching train, the exercise of greater care and caution was required on both sides; as well on the part of those having the management of the train as of those crossing the railroad; that the former should approach the crossing at a less rate of speed, and use increased diligence to give warning of their approach; and, if the train was a special one, it was still more incumbent upon them in going through such a place to slacken their speed and sound the whistle and ring the bell, than if the train were running on regular time; and, on the other hand, that the party crossing with a team should proceed with more caution and circumspection than if the crossing were in an open country, and not venture upon the track without ascertaining that no train was approaching, or, at least, without using the means that common prudence would dictate to ascertain such fact; but that. if a train were not a regular one, no train being due at the time, the same degree of caution would not be expected on his part as if it were a regular train and on usual time. In short, the judge charged that the obligations, rights, and duties of railroads and travelers upon highways crossing them are mutual and reciprocal, and no greater degree of care is required of the one than of the other. He further charged that the plaintiff could not have a verdict unless the persons in charge of the train were guilty of negligence or want of due care, and unless the plaintiff himself were free from any negligence or carelessness which contributed to the injury. The evidence of the case was fairly submitted to the jury in the light of the principles thus announced. This is the general scope of the charge; and we think it is in accordance with well-settled law and with good sense."

Further on in the opinion it is said:

"For, conceding that the railway train has the right of precedence of crossing, the parties are still on equal terms as to the exercise of care and diligence in regard to their relative duties. The right of precedence referred to does not impose upon the wagon the whole duty of avoiding a collision. It is accomplished with and conditioned upon the duty of the train to give due and timely warning of approach. The duty of the wagon to yield precedence is based upon this condition. Both parties are charged with the mutual duty of keeing a careful lookout for danger; and the degree of diligence to be exercised on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring fairly to perform his duty."

In Elliott on Railroad, vol. 3, 2nd Ed., sec. 1161, the duty of a railroad company where the view is obstructed is stated as follows:

"Where a crossing is unusually dangerous because the track is curved or the view obstructed, or because of its peculiar construction or situation, it is the duty of the company to exercise such care and take such precautions as the dangerous nature of the crossing requires."

In the case of Thomas, Adm., v. D., L. &. W. R. Co., 8 Fed. 729, the court, in the opinion, on page 730, uses the following language:

"The jury were also instructed that the defendant ordinarily had the right to maintain such a rate of speed as it might think proper, but that the condition of the crossing, for which the defendant was responsible, might impose some restrictions upon this right, and, under the circumstances, the jury might predicate negligence upon excessive speed. Upon all the facts it was left to the jury to determine whether the defendant failed to observe that measure of care which would be incumbent upon a prudent and intelligent individual under like circumstances. These instructions were as favorable as the defendant had any right to insist."

The defendant contends that the court erred in giving instruction No. 13. The point urged by the defendant to this instruction is, first, that it is obscure and does not clearly reflect the testimony; and, second, that it imposes a higher duty upon the railway company than is authorized by the law.

Referring to the first ground of objection, we must consider the point where the railroad crossed the highway. It is clearly shown that for several hundred feet along the public highway the railroad track is not visible. Before the railroad was constructed there was nothing to make travel on the highway more dangerous at that point than at any other point, and when the defendant company constructed its road across the highway extra danger was thereby created to travelers on the highway.

The defendant seems to be laboring under the impression that it was not responsible for the view of the railroad being obstructed from one on the highway; that the railroad company did not, either by any embankment or by any act, increase the natural obstruction to the view of the crossing; that the mound which obstructed the view was there before the railroad was built, and, therefore, the defendant was not responsible for the increased danger at this point on the highway.

It is obvious the place was one of danger, and the employes of the railroad company must be presumed to have known the facts, and the mere compliance with the statute in sounding a whistle or ringing a bell would not justify those having charge of the train in omitting other reasonable and necessary precautions. Because the statute has imposed certain duties, it does not follow that that is all that might be required at the particular time and place. As we have seen, the evidence was conflicting as to whether the whistle was sounded or the bell was rung as required by the statute.

There was also evidence that the train was running at a very rapid rate of speed. Some of plaintiff's witnesses had, on former occasions, tested the speed of the train, and we are inclined to believe they were qualified to determine approximately the rate of speed the train was going at the time. We can hardly conceive how anyone can reasonably contend that this was not a dangerous crossing, especially when we take into consideration that there was evidence from which the jury could find that the knoll or mound obstructed the view of the railroad; that this particular train failed to sound a whistle or ring a bell; that the train was from 40 minutes to one hour and 40 minutes late and at the time traveling at the rate of 50 or 60 miles an hour. While the instruction of the court complained of may have been more or less abstract, we are unable to see wherein, under the facts in this case, the defendant has been injured by this instruction. It is not contended by the defendant that the proposition embodied in the instruction was not a correct statement of the law, but that there was no justification for the same, that it was inapplicable to the facts and calculated to mislead the jury.

In I. & St. L. R. Co. v. Stables, 62 Ill. 313, par. 6 of the syllabus is as follows:

"Where a railroad is so constructed that the place where it crosses a public highway is unusually dangerous to the traveling public, as where its track intersects the highway in a cut and is approached on the road by descending a hill, and persons approaching the crossing cannot see the railroad track, owing to brush and bushes, until within a few feet of it, and then only a small portion of it, owing to a sharp curve, held, that a neglect to sound the whistle or ring the bell as required by the statute under such circumstances would be gross neglect."

Paragraph 7 of the syllabus in the same case is as follows:

"And where a railroad track crossed a public highway at a place of unusual danger and peril to persons who might be passing over such crossing in the highway, and a person traveling over the same with his wagon and team was struck and injured by a passing train which was running at a rapid rate, held, that the speed of the train might be considered in connection with the location of the roads and the other surrounding circumstances on the question of negligence."

In Louisville, Cincinnati & Lexington R. Co. v. Goetz's Adm'x, 79 Ky. 442, it was said:

"The right of the appellant to run its trains on the road at this point and at any reasonable rate of speed is unquestioned; but at the same time it is incumbent upon the company and its employes in charge of the train to exercise such care and precaution as to prevent injuring those traveling on public highways at points crossing the tracks of its railway. It is not necessary or required of those in charge of the train to stop in order to see whether or not persons are approaching the crossing; but, on the contrary, it has the right to pass, and those on the highway, seeing or knowing of its approach, or when the proper and necessary signals have been given so as to notify them of the train's approach, they must yield to the right of passage of the train. The great speed of the train, the necessities and safety of those on it, as well as the safety of the traveler on the ordinary highway, all require that this preference should be given; still it is the duty of those in charge of the train to give due and proper warning of its approach, that those crossing its tracks may know and avoid the danger; and when passing great thoroughfares thronged with travel, the speed of the train should be checked or other means devised to insure the safety of those on the highway; and a failure to give such warning or to use such precaution, must be regarded as negligence."

In Bilton v. Southern Pacific, 148 Cal. 443, it is said:

"Where the crossing was an exceedingly dangerous one by reason of a curve in the track and an obstructed view by an embankment, it was the duty of the railroad company to take reasonable care to prevent injury to those passing over the crossing; and where, if coming at a high rate of speed, it could not be seen by one passing over the track in time to escape from a place of danger to safety, it was its duty to moderate the speed accordingly, or in some manner make

the approach of the train reasonably apparent to the user of the street."

In C. & A. R. Co. v. Dillon, 132 Ill. 570, it is said:

"Where an approaching engine is concealed from the view of persons with vehicles approaching a highway crossing at a place of much travel, the duty of the railway company to operate its trains at a moderate rate of speed, and to give the usual signals of its approach by ringing of a bell or sounding a whistle, or both, is more imperative than at a place of less danger."

In Missouri Pac. R. Co. v. Moffatt, 44 Pac. 607, decided by the Supreme Court of Kansas, it was said:

"It was the duty of the railway company to give reasonable and proper warning for the protection of travelers on the highway, when its train approached the crossing. The number and kind of signals required depended upon the character of the crossing, the speed of the train, and the surrounding circumstances. It is earnestly argued that, the statutory signals having been given, the company had discharged its full duty to the public and Moffatt. Complaint is therefore made of an instruction in which it is stated that: 'The statute which requires a railroad company to give certain signals at street crossings was not intended to furnish a standard by which to determine in every case whether or not such company had fully discharged its duty to prevent injury to the traveling public. It was intended, rather, to prescribe the minimum of care which must be observed in all cases.' Under ordinary circumstances, in the open country a railroad company can run as many trains and at as great rate of speed as is consistent with the safety of its passengers. In such cases it will ordinarily be sufficient to give the signals that are required by statute. Where, however, the crossing is a dangerous one, and where the road is constructed in such a way and place as to make it more than usually difficult to see the train or to hear the signals that are given, additional signals may be required. In this case, it appears that the railroad is constructed between a bluff and the river and that the bluff intercepts the vision of travelers approaching from the west on the highway. * * * The Legislature did not undertake to prescribe a standard of care required in all cases. It is to be determined, rather, from the situation and circumstances surrounding it. It is the duty of the railroad company, when the statutory warnings or signals are insufficient, to give other and additional warnings, such as reasonable care and prudence would dictate under the circumstances of the particular case."

In the instant case, the evidence discloses that the deceased boys lived near this crossing and had frequently crossed the track before, and they are supposed to have been thoroughly familiar with the entire surroundings. There is no dispute as to the train being late. While the boys may have realized the great danger that would attend the attempted crossing at a time when the train was due, yet, at the time of the accident, if the defendant failed to give the statutory warning, there was less reason for them to presume danger at a time at least 40 minutes after the schedule time for the train to pass.

Defendant complains of the refusal of the court to give certain instructions requested defining "proximate cause." In instruction No. 7, given by the court, to which there was no objection, the jury were informed that negligence was the "proximate cause" of the injury only when the injury is the natural and probable result of such negligence and in the light of attendant circumstances ought to have been foreseen by a person of ordinary intelligence and prudence. This definition, in our opinion, is fully sustained by numerous decisions of this court.

In Ponca City Ice Co. v. Robertson, 67 Oklahoma, 169 Pac. 1111, it is said:

"An act of negligence may be said to be the 'proximate cause' of an injury when a man of ordinary experience and sagacity should foresee that the result might probably ensue."

The rule is more fully stated in Corrigan v. Oklahoma Coal Co., 68 Oklahoma, 171 Pac. 47, as follows:

"Strictly defined, an act is the 'proximate cause' of an event when, in the natural order of things and under the particular circumstances surrounding it, such an act would necessarily produce that event; but the practical construction of 'proximate cause' by the courts is a cause from which a man of ordinary experience and sagacity could foresee that a result might probably ensue."

In Northup v. Eaks, 72 Oklahoma, 178 Pac. 266, the court said:

"In order to warrant a finding that negligence, or an act, not amounting to wanton wrong, is the 'proximate cause' of an injury, it must appear that the injury was the natural and probable cause of the negligence or wrongful act; and that it ought to have been foreseen in the light of the attendant circumstances."

In view of the entire record, we fail to see wherein the defendant company has not had a fair and impartial trial. The evidence abundantly sustains the verdict, and, considered in their entirety, we fail to find wherein the defendant has been prejudiced by the instructions given by the court or in the refusal of instructions requested by the defendant. Our opinion is that the judgment

of the lower court should be affirmed, and it is so ordered.

All the Justices concur, except KANE and HARRISON, JJ., not participating.