**ST. LOUIS-S. F. R. CO. v. PUFAHL, Adm'r.**

No. 24598.   May 28, 1935.

E. T. Miller and Cruce & Franklin, for plaintiff in error.

Bailey & Hammerly and C. C. Hatchett, for defendant in error.

PER CURIAM. The parties to this action will be referred to as plaintiff and defendant, as they appeared in the court below.

This suit was filed on the 20th day of April, 1932, in the district court of Bryan county, Okla., by the above-named plaintiff, as administrator of the estate of J. E. Ganstine, deceased, for damages in the sum of $40,000, alleged to have been sustained by the wife and children of said deceased, by reason of the wrongful death of said deceased, as a result of which the plaintiff obtained a judgment of $12,525.

On April 22, 1932, a companion case was filed by said plaintiff, identical in all respects with the above case, except the plaintiff in said action prayed for damages on behalf of said estate for pain and suffering of said deceased; prior to his death, funeral and medical expenses, and hospital and doctor bills. This last-named suit was brought for the sum of $2,900, as a result of which plaintiff obtained a judgment in the sum of $613.85, of which $80.91 was remitted by plaintiff.

After the issues of the two suits were joined, they came on for trial, and by agreement of the parties and order of the court below, the two causes were tried together on exactly the same record; however, two verdicts were returned by the jury and separate judgments entered by the court and separate appeals have been prosecuted to

this court. As the trial record of the two cases is exactly the same, counsel have agreed that the brief and argument be presented to this court in this, the death case, and that the brief filed herein be considered by this court in 172 Okla. 452, 45 P. (2d) 733, which is the appeal in the other case, as above described.

As both plaintiff and defendant agree, there is little dispute as to the facts in this case. About the only controversy as to facts which is material is relative to the speed at which the train was traveling and the efforts made by the engineer to warn by blowing the whistle or ringing the bell. It appears that on December 28, 1931, one J. E. Ganstine was riding as an invited guest in a Ford, a one-seated, automobile owned and driven by D. S. Miser; they were in the city of Durant, Okla., traveling south on Ninth street; that the Frisco railroad runs parallel to Main street in Durant, and about one block south of Main street; that Ninth street intersects Main street; that two of the most heavily traveled highways in the state of Oklahoma are Jefferson Highway, officially known and designated as United States Highway No. 73, and Highway 75; that these highways turn off Main street in Durant onto Ninth street, and proceed south one block, where the highways cross the railroad of the defendant company, and continue on south over a paved highway to the Denison free bridge, across Red river and into Texas.

That the deceased, riding as a guest passenger in Mr. Miser's automobile, at about 10:30 o'clock a. m. on the aforesaid date, was traveling south on this highway, being Ninth street in Durant having turned into such highway from said Main street. That it is a distance of about one block from the intersection of Ninth and Main streets to the said railroad crossing. Ninth street is 18 feet wide, and paved with concrete. Traveling south from Main street, as you approach the railroad crossing, it is down grade. While in a populous area of the city of Durant, there are (no sidewalks constructed on either side of the pavement as you approach said crossing. Traveling south on said street and highway, a high embankment arises on one's right, on the west side of Ninth street. Such embankment arises abruptly from the curbing or guttering along the paving where vehicles travel, and this embankment on the west side of said street being from five to eight feet high; the street commissioner testified five and one-half feet. The embankment continues beyond the property line of individual own-

ers of property and extends out upon the railroad right of way a distance of 18 to 20 feet; from the end of this embankment to the rails of the main line track of the defendant company over which said train was traveling, it is approximately 20 to 25 feet.

Again, it is undisputed that Miser and the deceased approached the track upon which the train was running, at a speed from 10 to 12 miles per hour; that Miser looked to the left and saw no train approaching, and was unable to hear or see the train approaching from the right on account of the embankment which obscured his view of the track. That as he was on the right of way, approaching the end of the embankment, he accelerated the speed of the car to about 15 miles per hour. As he emerged beyond the embankment he first heard the bell and saw the train approaching, and it was about 50 feet away at that time; that he swerved the car to the left, but he was unable to make the short turn and the collision occurred which resulted in the death of the deceased. There is some dispute as to the speed of the approaching train. The motorman estimated the speed at from 15 to 18 miles per hour, while Miser estimated it was moving at the rate of 40 to 50 miles per hour. Other witnesses estimated the speed at about 25 to 30 miles per hour. The engineer testified that he did not see the automobile at any time until after the collision, when his attention was called to it by the breaking of glass in the compartment where he was stationed. He further testifies that he applied the emergency air brakes immediately following the collision, and put on the sand; that the brakes were working, all wheels being equipped with air brakes, and that he did everything that was possible to stop the train, which consisted of a motor combination car and one coach. Others testified that he stopped the train 250 or 275 feet below the crossing. Another witness puts the distance at over 300 feet. The undisputed evidence is that the train dragged the car the full distance.

The petition alleges that the said crossing is located at a thickly and densely populated portion of the city of Durant in Bryan county, Okla., being in practically continuous use by an extremely large number of motor cars and vehicles, and that the collision between the train and the car in which the deceased was riding was brought about and caused by the carelessness and negligence of the defendant company, in the following particulars, to wit:

"(a) Failure to properly safeguard the crossing with flagman or watchman.

"(b) Failure to maintain sufficient electric or other warning signals to warn of approach of train.

"(c) Maintenance of high embankment on right of way, obstructing view of persons approaching crossing.

"(d) Excessive speed of train, considering dangerous character of crossing.

"(e) Failure to give sufficient warning of approach of train by proper blowing of whistle or ringing of bell."

The assignments of error in defendant's brief are argued under the following propositions:

"(1) The verdict of the jury returned in this case was not supported by sufficient evidence.

"(2) The instruction of the court, taken as a whole, failed to state any rule by which the jury should be guided in determining the question as to whether or not the defendant was guilty of negligence in the maintenance of the crossing and approaching same with its train on the date of the accident.

"(3) The court committed error in giving to the jury paragraph No. 5 of his instructions."

And we will consider these propositions in the order above set out.

Turning now to the defendant's first proposition, to wit, that the verdict of the jury is not supported by sufficient evidence, we quite agree with the defendant that the mere facts that an accident has occurred and that the deceased was killed as a result thereof are not sufficient to establish negligence upon the part of the defendant. Negligence, of course, is never presumed, It is an affirmative fact for the injured party to establish.

However, we think it is just as elemental that in a law action a verdict of a jury is conclusive as to all disputed facts and conflicting statements; and that where there is **any competent evidence reasonably tending to support the verdict** of the jury, a reviewing court will not invade the province of the jury and will not disturb its verdict. In Big Twelve Oil & Gas Co. v. Eco, 159 Okla. 110, 14 P. (2d) 377, this rule is well stated as follows:

"In a law action, the verdict of the jury is conclusive as to all disputed facts, and to all conflicting statements; and, where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not invade the province of the jury, and will not disturb the verdict of the jury."

This has long been the rule in this jurisdiction, and we know of no departure therefrom.

It is undisputed that the railroad company did not maintain a flagman or watchman at the crossing to warn travelers of an approaching train, nor was the crossing equipped with automatic signals for that purpose. It is true that our statute (section 1430, R. L. 1910 [sec. 11961, O. S. 1931]), does not require the maintenance of a flagman or automatic signals, while it does require the ringing of a bell or the blowing of a whistle, but this court has held that this statute is not intended to furnish a standard by which to determine in every case whether or not such company had failed to discharge its duty in respect to giving sufficient warning to the traveling public of the approach of trains, but it is intended rather to prescribe the **minimum of care** which must be observed in all cases.

In M., K. & T. Ry. Co. v. Stanton, 78 Okla. 167, 189 P. 753, this court said:

"The statute which requires a railroad company to give certain signals at highway crossings was not intended to furnish a standard by which to determine in every case whether or not such company had failed to discharge its duty in respect to giving sufficient warnings to the traveling public of the approach of its trains. It was intended rather to prescribe the minimum of care which must be observed in all cases."

See, also, St. Louis-San Francisco Ry. Co. v. Rundell, 108 Okla. 132, 235 P. 491; Wichita Falls N. W. Ry. Co. v. Groves, 81 Okla. 34, 196 P. 677.

Now, considering the undisputed facts that this crossing is located in a densely populated district in the town of Durant, and that two of the principal highways of the state of Oklahoma cross the railroad at this point, over which almost continuously automobiles and other vehicles are traveling, the following questions arise:

Was there anything unusual about this crossing? Was it a dangerous crossing? Did the failure of the railroad company to maintain a watchman at the crossing, or automatic signals for the purpose of warning travelers of the approach of trains, constitute a lack of ordinary care? Did the maintenance of the said embankment out and upon the right of way, and which obscured the vision of the occupants of this car, constitute a lack of proper care on

the part of the railroad company? Did the engineer of the approaching train use ordinary care in approaching the crossing? Was the train, in view of all the circumstances, traveling at a reasonable rate of speed, or was it moving at a dangerously reckless rate of speed, and did the speed at which the train was moving indicate a lack of ordinary care on the part of the railroad company? Was the driver of the car guilty of contributory negligence, as defined by the instructions of the court, in crossing this track?

We are of the opinion that the answers to the above questions were for the jury only. Regardless of the rule in other jurisdictions, it seems to be the fixed, rule in this state, early established in our decisions, that the questions of negligence and contributory negligence are within the exclusive province of the jury, and that if there is any evidence reasonably tending to support the verdict, a reviewing court will not disturb the verdict.

Defendant's second proposition is that the instructions of the court, taken as a whole, fail to state any rule by which the jury can be guided in determining the question as to whether or not the defendant was guilty of negligence in the maintenance of the crossing and approaching same with its train on the date of the accident. The defendant states that it does not complain (except as to instruction No. 5) that the instructions of the court fail to state abstract principles of law, but that it does complain that the trial court did not in its instructions furnish a yardstick by which the jury might measure and determine the duties resting upon the railroad company. Instruction No. 1 is as follows:

"You are instructed that the term 'negligence,' as used in these instructions and in this lawsuit, is defined to you to be the doing of some act or the failure to do some act, which an ordinary prudent person would, or would not do under the same, or like, circumstances."

Instruction No. 2 is as follows:

"You are further instructed that the term 'contributory negligence,' as used in these instructions and this lawsuit, is the doing, or the failure to do, some act which a reasonably prudent person would, or would not, have done which contributes to or aids in the commission of the act complained of, but for which the act complained of would not have taken place."

We think that instruction No. 1 fairly defines the term "negligence," and that in-

struction No. 2 fairly defines the term "contributory negligence." Furthermore, after a careful examination of the instructions as a whole, we are of the opinion that they fully and fairly state the law of the case, and that they did furnish the jury a guide in determining the issues presented, and that they went as far as a court may properly go without invading the province of the jury. In the case of M., K. & T. Ry. Co. v. Stanton, supra, this court said:

"It is not the province of the court to particularize what acts shall constitute negligence, or what acts shall constitute ordinary care. This is a question solely for the jury. It is for the jury to say from all the facts, circumstances, and the surroundings at the time whether or not ordinary care and caution were used. It is true the statute requires a specific duty on the part of the railroad company as to the blowing of a whistle or ringing of the bell, but otherwise the court is positively prohibited from saying to the jury what acts shall constitute negligence, in a given case."

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys W. D. Abbott, Hulette F. Aby, and Wm. O. Beall in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Abbott, and approved by Mr. Aby and Mr. Beall, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.