Wenoka K. WALKER, Appellee,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Missouri corporation, and
L. E. Brewer, Appellants.

Richard L. WALKER, Appellant,

v.

ST. LOUIS–SAN FRANCISCO RAILWAY
COMPANY, a Missouri corporation, and
L. E. Brewer, Appellees.

Nos. 54430, 54491.

Supreme Court of Oklahoma.

Feb. 16, 1982.

As Corrected Feb. 26 and March 1, 1982.

As Corrected on Denial of Rehearing
April 14, 1982.

Franklin, Harmon & Satterfield by Ben Franklin and John Leo Wagner, Oklahoma City, for appellant, St. Louis-San Francisco Ry. Co.

Jack B. Sellers, Sapulpa, for appellee, Wenoka K. Walker.

Joe A. Moore, Memphis, Tenn., for appellant, Richard L. Walker.

SIMMS, Justice:

This consolidated appeal arose from a negligence action brought by Wenoka K. Walker against the St. Louis-San Francisco Railway and L. E. Brewer after her car and a train collided at a grade crossing, resulting in personal injuries. The crossing in question was not equipped with any special warning devices other than a crossbuck sign. Richard Walker, plaintiff's husband, brought a derivative action for loss of society, companionship, and consortium. The railway company and Brewer denied negligence and alleged contributory negligence because of intoxication, failure to observe warnings, and failure to yield the right of way. They also denied that Richard Walker sustained any damage because of the Walker's long history of marital discord.

St. Louis-San Francisco Railway Company and employee L. E. Brewer (hereafter the railway company) appeal from a jury verdict finding that Wenoka Walker suffered damages in the amount of $268,973.11. The jury further found plaintiff 25% negligent and defendant railway 75% negligent, thereby reducing the amount of the verdict to $201,730.44. Richard K. Walker appeals the jury's denial of damages for loss of consortium.

Appellants present several issues for review including one of first impression: the duty of a railway company to erect warning signals, as determined by the relationship between 17 O.S.1971, § 86, and 66 O.S.1971, § 124 and § 130.

I

Appellant railway believes the jury should have been instructed that under 17 O.S.1971, § 86 [1], a railroad can be held liable for negligence in failing to install warning devices, but only after the Oklahoma Corporation Commission has ordered such devices emplaced. Under 17 O.S.1971, § 86, defendant asserts it has no duty to install warning devices exists until the Corporation Commission (1) designates a crossing as extra-hazardous and (2) orders the railroad to install the appropriate warning devices. Railroad argues in order to make out a prima facie case, plaintiff should have presented proof that the railway company was acting contrary to an order of the Corporation Commission finding that the railroad was under a duty to provide special cautions. Railroad articulates a decidedly minority view. *Penn v. Burlington Northern, Inc.,* Mont. 605 P.2d 600 (1980); 24 A.L.R.2d 1169.

We find unpersuasive appellant's reliance on *Missouri-Pacific Railroad Co. v. Owen,* 306 F.2d 887 (5th Cir. 1962), in arguing this point. The court begins with a general assertion supporting appellant's position:

"The placing of safety devices at crossings, such as gates, lights, flashing sig-

---

1. 17 O.S. § 86. "Extra hazardous crossings—Protective devices—Costs. The Oklahoma Corporation Commission shall have the authority, after having made proper investigations, to designate those grade crossings which are extra hazardous. At all such crossings so designated, the Commission shall have the authority to order the installation of appropriate protective devices. All such installations to be performed by the railroad. The Commission shall have the authority to determine the number, type, and location of such signs, signals, gates or other protective devices, which, however, shall conform as near as may be with generally recognized national standards, and said Com-

mission shall have authority to prescribe the division of the cost of the installation of such signs, signals, gates or other protective devices between the public utility and the State or its political subdivisions; provided, however, that the cost to the utility shall be not less than ten (10) per cent or more than twenty-five (25) per cent of the total costs. The railroads shall be responsible for all subsequent maintenance and cost thereof. Provided, however, that the results of investigation or investigations, findings, determinations, or orders of the Corporation Commission shall not be admissible in any civil action."

nals, gongs or a flagman, is generally covered by statute or city ordinance, and the general rule is that, in the absence of such statute or ordinance, the railroad is not under the duty to provide these special precautions."

It goes on, however, to qualify that rule:

"We do not mean to imply that liability can be predicated upon the dangerous crossing doctrine only by ordinance or statute. We hold merely that, *under the facts of this case, there was no proof sufficient to warrant the jury in finding that this crossing was an extra-hazardous one*; and we think it was reversible error for the court to submit the question to the jury." [E.A.]

Although we have not previously decided this point by a construction of the interrelationship between 17 O.S.1971, § 86, and 66 O.S.1971, §§ 124, 130 [2], we find earlier decisions of our Court more in keeping with the majority view that whether ordinary care or reasonable prudence requires a railroad company to erect and maintain warning signs or other warning devices in addition to those required by statute at a crossing which is unusually dangerous is a question of fact for the jury. See: *St. Louis-San Francisco v. Rundell*, 108 Okl. 132, 235 P. 491 (1925); *St. Louis-San Francisco Ry. Co. v. Prince*, 145 Okl. 194, 291 P. 973 (1930) [3].

*St. Louis-San Francisco Ry. Co. v. Pufahl*, 172 Okl. 449, 45 P.2d 729 (1935), while not speaking directly to the question of whether a railroad can escape liability because the Corporation Commission has not designated the crossing as ultrahazardous and ordered certain warning signals, does give a sense of what Oklahoma policy has been in this area:

"A statute which requires that the engine bell be rung or its whistle blown when the train approaches a crossing, but which does not require a flagman or automatic signal there, is not intended to furnish a standard by which to determine whether or not in every case the railroad has discharged its duty in respect to giving warning of the approach of trains, but is intended rather to prescribe the minimum of care which must be observed in all cases."

Recently Indiana has been in the process of shifting from the minority to the majority view on this question. *Stevens v. Norfolk and Western Ry. Co.*, 171 Ind.App. 334, 357 N.E.2d 1 (1976), quotes the following language which we find highly convincing:

"To say that a railroad can be held to be negligent for the dangerous condition of its highway crossing only in the event it violates a statute or order of the Public Service Commission is, in effect, exempting it from the common law rules of negligence that are applicable to all persons, including operators of motor vehicles. It is evident without citation of authorities that although motor vehicles have statutes or regulations which control their operation and a violation of which may be held to be negligence, still there are other acts not covered by statutes or regulations for which an operator of a motor vehicle may be held liable under the common law of negligence. I feel the same principle applies to all persons alike, including railroads." *Tyler, etc. v. Chicago & Eastern Ill. Ry.*, 173 N.E.2d 314 (1961).

In light of the foregoing discussion illustrating the better reasoning of the majority view and Oklahoma's prior case law, we

---

**2.** *66 O.S.1971, § 130.* "Warning signal devices—Rules and Regulations. The Oklahoma Corporation Commission shall promulgate rules and regulations for the design, installation, construction, maintenance, inspection, and testing of warning signal devices at highway and railroad crossings in the State of Oklahoma."

*66 O.S.1971, § 124.* "Signs at crossings. Every railroad corporation operating a line of road within this State must erect suitable signs of caution at each crossing of its road with a public highway."

**3.** Though *Prince* discusses an earlier statute (Comp.St.1921, § 5529; Laws 1925, c. 101, § 3), it relies on general common law principles applicable to the instant case and to the construction of the statute in question.

hold that liability may be imposed absent a statutory requirement if the facts of the particular case are such as to give the railroad the duty to warn the traveling public of the extra-hazardous nature of the crossing. The question of the presence of an extra-hazardous crossing should be left to the jury's determination.

## II

■ Appellant argues that the evidence was insufficient to support the verdict because "the overwhelming preponderance" of the evidence showed that Mrs. Walker's actions constituted the sole proximate cause of her injuries. The railway company justifies it's argument by the fact that defendants presented more witnesses than plaintiff. We cannot agree that this fact, without more, necessarily constitutes a preponderance of the evidence. A rudimentary principle in the law of evidence is that the quality or believability of the evidence presented rules over mere quantity. Notwithstanding that principle, it is within the province of the jury to determine the credibility of the witnesses and to decide the effect or weight to be given their testimony. Therefore, we adhere to the rule set forth in the syllabus of *Wat Henry Pontiac v. Pitcock*, Okl., 301 P.2d 203 (1956):

"In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and *where there is any competent evidence reasonably tending to support the verdict of the jury*, this court will not disturb the verdict and judgment based thereon." [emphasis supplied]

■ After examination of the record we conclude there is evidence reasonably tending to support the plaintiff's allegations. The record contains evidence, albeit conflicting, that the railway breached its duty to sound a warning upon approach of the crossing and, as a result, plaintiff sustained injury.

66 O.S.1971, § 126 requires a locomotive to sound a warning bell at a distance of at least eight rods from the place where the railroad crosses any other road or street. 47 O.S.1971, § 11–701(a) requires a person driving a vehicle approaching a railroad grade crossing "to stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad" when [in pertinent part]:

"(3) A railroad train approaching within approximately one thousand five hundred feet of the highway crossing emits a signal audible from such distance and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;

"(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing."

Conflicting evidence exists in the record as to whether plaintiff had a duty to stop because (1) a warning was sounded or (2) plaintiff could see an approaching train. Defendants contend plaintiff was unaware of the approaching train because of intoxication. The only evidence of such intoxication, however, is the testimony of police officers that they smelled the odor of alcohol in plaintiff's car and on her person; no tests were ever done, and no convincing proof exists in the record of plaintiff's alleged state of intoxication. The only testimony of the sounding of a warning, other than the testimony of railroad employees, was the police officers' testimony of hearing a warning signal in the distance. Because of the existence of other crossings in the vicinity, the sounding of a warning can only be tenuously linked to the particular train and crossing in question. Even if the warning was heard, the police officers could only guess as to whether it was given at the statutorily prescribed distance.

■ The jury apparently believed that the proper warning was not given. As a general rule, whether a proper warning is given is a question for the jury as long as the evidence permits several inferences. It is only when the evidence permits only a single inference that the verdict will be

directed. *Missouri, Kansas, Texas Ry. Co. v. Flowers*, 187 Okl. 158, 101 P.2d 816 (1940)[4]; *Missouri, Kansas, Texas Ry. Co. v. Chief Equipment*, Okl., 421 P.2d 841 (1966).

4. *Missouri, K. and T. Ry. Co. v. Flowers* illustrates the kind of case where a directed verdict is appropriate: "But there must be positive evidence on the part of plaintiff that no such warning was given if he expects to establish negligence in that respect. Negligence is never presumed. Here the driver of the truck testified that he heard neither bell or whistle. That evidence standing alone is negative in character and does not constitute evidence that no warning was sounded. It must be accompanied by evidence to show that the driver was in a position to hear and was giving special attention to the matter." In the instant case, the record contains evidence that appellee Walker was giving special attention to the matter (i.e., her window was down, she was being cautious because of her familiarity with the crossing.)

5. "INSTRUCTION NO. 24—You are directed to consider the negligence or fault, if any, of the parties involved in the accident and make findings thereon. Your· findings must be based upon the preponderance of the evidence.

1. If you find from a preponderance of the evidence that the accident was caused entirely by negligence or fault on the part of the defendants and not by any negligence or fault on the part of Wenoka K. Walker that contributed to the accident, then plaintiffs are entitled to recover the full amount of damages which you may find they have sustained that were proximately caused by the negligence of defendants. If it is your finding that Wenoka K. Walker was not negligent, then you will fix her percentage of negligence at zero and the negligence of defendants at 100%. In considering the amount of damages, if any, you may only take into consideration those elements of damage set forth in the next spearately numbered instruction.

2. Should you find from a preponderance of the evidence that the accident was proximately caused by negligence of fault on the part of Wenoka K. Walker and of the defendants, then you shall determine the percentages of negligence of each party.

3. (a) If you find the negligence or fault of Wenoka K. Walker is of a lesser percentage than the negligence or fault of defendants, then plaintiffs are entitled to recover the amount of such damage, which you may find they have sustained as a direct and proximate result of the accident. You must then fix the amount of total damage by completing the verdict form that is provided. In this regard, you are advised that the Court will reduce the damage amount you fix by deducting from said sum the percentage of negligence or fault, if any, on the part of Wenoka K. Walker. In considering and

**III**

Instructions No. 24 and 25 set out the method the jury must use in determining damages.[5] After reviewing the instructions

arriving at the amount of damages, you may only take into consideration the elements of damage set forth in the next separate numbered instruction.

(b) Should you find by a preponderance of the evidence that the negligence of Wenoka K. Walker is equal to or greater than the negligence of defendants, then your verdict must be for the defendants and against the plaintiffs.

(c) You are further instructed that plaintiff Richard L. Walker cannot recover from defendants in the event you find that the negligence of Wenoka K. Walker was equal to or exceeds the negligence of the defendants.

(d) If you should find by a preponderance of the evidence that neither plaintiff nor defendants were negligent, then plaintiffs cannot recover from defendants."

"INSTRUCTION NO. 25—Should you find from a preponderance of the evidence, under the instructions, in favor of the plaintiff Wenoka K. Walker, then you may assess the amount of her recovery for such damages, if any which you find from a preponderance of the evidence were sustained by Wenoka K. Walker as a direct and proximate result of the collision, and which must not be oppressive or unconscionable, but which you find will fairly and reasonably compensate her insofar as the same may be computed in money; and in this regard, you may take into consideration the age of Wenoka K. Walker, her physical condition immediately before and after the collision, the nature and extent of her injuries, if any, whether her injuries are permanent or otherwise, conscious pain and suffering, disfigurement mental pain and anguish, disbility [sic], loss of earnings past and future, if any medical expenses past and future, damage to her Volkswagon [sic] automobile, and award such sum as you determine will reasonably compensate Wenoka K. Walker therefore, not to exceed in any event, the amount she has sued for, $268,973.99.

"Should you find from a preponderance of the evidence, under the instructions, in favor of plaintiff Richard L. Walker, then you may assess the amount of his recovery for such damages, if any, which you find from a preponderance of the evidence he has sustained as a result of the injuries to his wife, and which must not be oppressive or unconscionable, but which you find will fairly and reasonably compensate him and in this regard, you may take into consideration the loss of society, services, aid, care, contributions, companionship and consortium of his wife, and award him such sum as you determine will reasonably compensate him not to exceed in any event, the amount he has sued for, $125,000.00."

as a whole we find no merit in appellant railway's objections that the instructions implied by the language "entitled to recover the full amount (Instruction 24, para. 1) that the jury had to award the full amount of the prayer in the petition or nothing at all.

■ Taken out of context and alone, this segment of the instruction could conceivably mislead a jury. But we will not read the instruction in this hypertechnical way. Read as a whole, the instructions make clear that the jury's duty is to award reasonable damages, such damages as will fairly compensate plaintiff for injuries sustained as the result of defendant's negligence. Statutory and case law dictate that although a single instruction, standing alone, may be subject to criticism, no reversible error is shown if the instructions construed in their entirety fairly submit issues to the jury. 12 O.S.1971, § 78 [6]; *Wooten v. Hall*, Okl., 442 P.2d 334 (1968); *Stills v. Mayor*, Okl., 438 P.2d 477 (1968). Instructions 24 and 25 read together fulfill this test.

### IV

■ Appellant railway company also contends that the damage award was excessive. Appellate review of the charge of excessive damages is limited, as the syllabus in *Austin Bridge Co. v. Christian*, Okl., 446 P.2d 46 (1968), states:

"In a suit for damages for personal injuries, before a verdict of the jury will be set aside as excessive it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to

have been activated by passion, partiality, prejudice or corruption."

Statutory law also limits the amount of damages recoverable in Oklahoma:

"Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable, and grossly excessive damages, contrary to substantial justice, no more than reasonable damages can be recovered." 23 O.S.1971, § 97.

The issue of damages is left to the judgment of the jury, subject to our correction only if the jury was activated by prejudice or guilty of "abuse and passionate exercise." *Chicago, Rock Island & Pacific R. Co. v. Hawes*, Okl., 424 P.2d 6 (1967); *Walton v. Bennett*, Okl., 376 P.2d 240 (1962). After reviewing the record we find nothing to indicate that the jury issued a verdict that was the result of passion or prejudice.

### V

■ Railway company's final objection regarding damages is the failure of the trial court to give requested instructions charging the jury to reduce any damages awarded for future disability or loss of earnings to its present worth. Because no exception was made at trial to Instructions 28 and 29, we need not review this objection on appeal. Compliance with 12 O.S.1971, § 578 is mandatory.[7] See: *Rogers v. Worthan*, Okl., 465 P.2d 431 (1970); *Huff v. Duncan*, Okl.App., 530 P.2d 134 (1974); *Missouri-Kansas-Texas Ry. Co. v. Edwards*, 361 P.2d 459 (1961).

### VI

Another assignment of error is the trial court's refusal to allow cross-examination

---

**6.** "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

**7.** § 578 Exceptions to instructions—Copies to Parties—A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to make objection thereto

by dictating into the record in open court, out of the hearing of the jury, after the reading of all instructions, the number of the particular instruction that was requested, refused and is excepted to, or the number of the particular instruction given by the court that is excepted to. Provided, further, that the court shall furnish copies of the instructions to the plaintiff and defendant prior to the time said instructions are given by the court.

of witness Nurse Mitchell on the contents of Exhibit 8, an emergency room record of a previous hospital admission of plaintiff. After the court sustained plaintiff's objection to the use of Exhibit 8 as outside the scope of examination and irrelevant, the following offer of proof was made:

"... defendant offers to prove that the witness, if allowed to testify, would testify that her signature appears upon that exhibit, and that she was the nurse in the emergency room at the time that Wenoka Walker was brought in after her altercation with her husband, and after the injuries that she received at that time; and that this witness would testify that there was no notation made at that time of any alcohol smell on the breath of Mrs. Walker. This is the entire purpose of this, and we feel that it affects the credibility of the witness." [Tr. 579]

For this particular evidence to be considered relevant in showing Nurse Mitchell's bias or prejudice, a painstaking foundation would have to be constructed, especially since the evidence was offered to show the absence of a prior notation. The evidence would attain some semblance of relevancy only if there was a showing that on a specific day plaintiff was intoxicated, had the odor of alcohol on her person and was admitted to the emergency room where Nurse Mitchell neglected to make a notation of plaintiff's state. 12 O.S.Supp.1978, § 2104.

■■ The Oklahoma Evidence Code, 12 O.S.Supp.1978, § 2104, allows the trial court wide latitude in the admission and exclusion of evidence unless a substantial right has been affected. Defendants were allowed to present before the jury evidence of the possibility of Nurse Mitchell's bias because of friendship to plaintiff's sister and she was questioned as to the possibility of her ignoring her duty to report plaintiff's intoxication in order to protect plaintiff.

We affirm the trial court's ruling excluding cross-examination on Exhibit 8.

## VII

Appellant Richard Walker asks us to consider whether there was error in the jury's failure to award damages for loss of society and consortium. Appellant suggests that if one spouse has suffered injury and been awarded damages and the jury has found for both, the other spouse is entitled to an award of damages.[8] In support of this general proposition, appellant cites *Ruland v. Zenith Construction Co.*, Okl., 283 P.2d 540 (1955). While *Ruland* stands for the proposition that a spouse is entitled to *bring* a derivitive action for loss of consortium, it in no way implies that once the jury determines liability, collateral damages follow as a matter of course.

■■ *Hinkle v. Hampton*, Okl., 495 P.2d 117 (1972), held that the evidence in the case was insufficient to support an award for loss of consortium where the husband did not testify and there was no evidence as to what the husband himself lost because of his wife's injuries. Although in the instant case the husband testified, the jury decided the evidence did not prove sufficient loss to entitle him to a damage award.

On this, and all other issues raised by appellants, we AFFIRM THE TRIAL COURT.

IRWIN, C. J., BARNES, V. C. J., and HODGES, LAVENDER, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in part, dissents in part.

---

8. See: "Validity of Verdict or Verdicts by the Same Jury on Personal Injury Action Awarding Damages to Injured Spouse But Denying Recovery to other Spouse Seeking Collateral Damages, or Vice Versa." 66 A.L.R.3d 472 (1975).