**Azalete McDOWELL, Appellee,**

v.

**Raymond GLASSCOCK and Bertha Glasscock, Appellants.**

No. 58950.

Court of Appeals of Oklahoma, Division No. 2.

Oct. 4, 1983.

Released for Publication by Order of Court of Appeals Dec. 5, 1983.

Charles D. Neal, Jr., Steidley, Neal & Davis, McAlester, for appellants.

Monte Brown, Allford, Ashmore, Ivester, Brown & Zellmer, McAlester, for appellee.

MEANS, Judge.

Defendant property owners appeal from a jury verdict in favor of the plaintiff in a slander of title action. Having reviewed the record and applicable law, we affirm.

In 1973, Raymond and Bertha Glasscock purchased property in Pittsburg County owned by Mr. and Mrs. G.C. England. The Glasscocks hired attorney P.B. to examine the title. Attorney P.B. found no defects in his examination. Based on the attorney's title opinion the Glasscocks borrowed money from the bank to purchase the land described in the deed. The warranty deed and mortgage were both recorded.

In 1976, Azalete McDowell purchased a tract adjoining the Glasscocks' property. McDowell did not have a title search nor a title opinion done prior to the time she purchased and recorded her deed.

Consequently, in 1978, when McDowell tried to sell her property she learned she did not have marketable title. In examining the abstract the title examiner discovered that the warranty deed from the Englands to the Glasscocks contained a mistake in the legal description. This mistake in the description of the Glasscocks' land overlapped onto McDowell's land creating a cloud on her title. Because McDowell's contract with her buyer required her to give marketable title, she sought to remedy the defect.

McDowell's attorney contacted the Glasscocks, explained the problem and asked them to sign a quit claim deed which they refused to do. Later, the Glasscocks met at the bank with the loan officer, attorney P.B., and McDowell's realtor. They were shown the results of a property survey and apprised of the problem in their deed. Attorney P.B. explained that he had made a mistake in his 1973 title opinion and that the legal description in the Glasscocks' deed was actually incorrect. The bank acknowledged the mistake and was willing to re-lease the mortgage on that part of the land actually owned by McDowell. However, the Glasscocks still refused to sign a quit claim deed. Their testimony was that they did not understand what was being asked of them and they thought someone was trying to steal their property. They did later offer to buy the property from McDowell.

After these refusals to sign a release or quit claim deed, McDowell released her buyer from the contract, instituted a quiet title action, and sued the Glasscocks for slander of title.

In the quiet title action, the court granted summary judgment for McDowell. The Glasscocks did not dispute McDowell's ownership. The slander of title action was tried to a jury and McDowell was awarded $585.20 in actual damages. The Glasscocks have appealed the jury verdict and the awarding of attorney's fees to McDowell.

There are four primary issues to be resolved in this appeal.

1. Whether a seller who releases a buyer from a contract can bring a slander of title action.

2. Whether a seller who has constructive notice of an instrument which creates a title defect can maintain a slander of title action.

3. Whether the verdict is supported by the evidence.

4. Whether the award of attorney's fees was proper.

In *Ward v. Mid-West & Gulf Co.*, 97 Okl. 252, 253–54, 223 P. 170, 171 (1923), the court quoted the following language to explain slander of title:

"An action for slander of title is an action of tort, and is not properly for words spoken, or for a libel written or published, but an action in the nature of an action of trespass on the case for special damages sustained by reason of the speaking or publication of the slander of plaintiff's title. The cause of action is denominated slander of title, by a sort of figure of speech, in which the title is personified and made subject to many of the rules applicable to personal slander

when the words themselves are not actionable.

.    .    .    .    .

"(c) Prerequisites to Right of Action First. In General. In order for plaintiff to recover in the action he must prove: (1) The uttering and publishing of the slanderous words; (2) that they were false; (3) that they were malicious; (4) that he sustained special damage thereby; and (5) that he possessed an estate or interest in the property slandered.

"Second. Falsity. In order to maintain the action it is necessary to establish that the words published were false. If the alleged defect or infirmity in title or property exists, the action will not lie, however malicious the intent to injure may have been, because no one can be punished in damages for speaking the truth. Indeed it is held that in order to constitute malice there must be a false statement.

"Third. Malice. (a) In general. Malice is a necessary ingredient to entitle plaintiff to recover. Indeed it is said that malice is the gist of the action."

### I

■ The Glasscocks rely on *Rucker v. Burke,* 183 Okl. 639, 84 P.2d 20, 21 (1938), to state that a seller who releases a buyer can never sue for slander of title. Of course, this holding is predicated on the premise that the seller must have an *enforceable* contract.

The cases with holdings such as *Rucker* are ones where the seller has done all he is required to do under the terms of the contract for sale. The buyer then refuses to consummate the sale because of a slander of title. Subsequently, the seller cannot release his buyer and sue the third party for slander. The seller's action is against the buyer for breach of contract.

The situation is different when the seller cannot meet her contractual obligations. As the trial judge pointed out, McDowell cannot possibly win in an action against the buyer because she has not met the conditions precedent to the contract for sale. Such an action would be absolutely futile.

In *Smith v. Autry,* 69 Okl. 28, 29–30, 169 P. 623, 624 (1917) (emphasis added), the court took note of a similar fact situation and stated:

The gravamen or gist of the plaintiffs' cause of action is that the acts of the defendants wrongfully prevented the plaintiffs from making a sale of said property to the said Gillette; the prevention of the plaintiffs from entering into an enforceable contract with the said Gillette. If the plaintiffs should have entered into an enforceable contract with the said Gillette, the law seems to be settled that the plaintiffs' action then would have been to enforce his contract against the prospective buyer, and not against the plaintiffs for damages for slander of title. *The very thing which the defendants contend was necessary to complete their cause of action against the defendants would have defeated their cause of action against them.*

... [T]hat the plaintiffs had a prospective purchaser who would have purchased had it not been for the acts of the defendants complained of is one of the essential elements that the plaintiffs must establish in order to establish their cause of action.

### II

■ The Glasscocks argue that because McDowell had constructive notice of the defect when she purchased, she is estopped from later alleging harm. In support of this, they rely on a Kansas case, *Glimac Oil Co. v. Weiner,* 150 Kan. 430, 94 P.2d 309 (1939), to establish that where an instrument is filed of record the plaintiff is charged with knowledge of its contents and is in no position to complain of slander of title. What the Glasscocks fail to note is that the *Glimac Oil* case was decided under a Kansas statute which controlled the decision.

In *Glimac Oil* the plaintiff purchasers of an oil and gas lease acquired title to the lease in May 1937. Prior to that date in

November 1936, the defendants had filed an affidavit in the chain of title asserting an interest in the lease. The Kansas statutes provided that anyone who filed such an affidavit setting out a claim or lien to real property had thirty days in which to bring an action to enforce the claim.

The court held that since the thirty days had long expired by the time the plaintiffs acquired the lease, there was no slander of title. The court, in dicta, stated:

> Besides the plaintiff is in no position to complain. The affidavit was of record when he acquired title. While the statement was not acknowledged, the statute 67–254 recognizes that such an instrument may be filed of record, and the plaintiff was therefore charged with notice of its contents.

The Kansas court's rationale cannot apply to our fact situation. Such a holding might be appropriate if McDowell's action were based solely on the original language in the Glasscocks' deed. However, McDowell alleged that the Glasscocks' repeated refusals to sign the quit claim deed constitute the slander which caused her harm. Such continuing refusals resulted in republications of the defective description. These republications of the slander were the basis of McDowell's action. Her cause of action was not based on the faulty description in the original deed.

### III

In review of a jury verdict, this court is bound to sustain the verdict "where there is any competent evidence reasonably tending to support the verdict of the jury." *Walker v. St. Louis-San Francisco Ry.,* 646 P.2d 593, 597 (Okl.1982).

The Glasscocks contend there was no evidence of malice to support the verdict. Although malice does not mean ill will or hatred, it is essential for recovery in a slander of title action. As stated in *Ward v. Mid-West & Gulf Co.,* 97 Okl. 252, 254, 223 P. 170, 171 (1923) (emphasis added):

> "Again, this action cannot be maintained without showing malice, *and want of probable cause.* If what the defendant did was in pursuance of a bona fide claim which he was asserting honestly, and especially if he was acting under the advice of counsel though without right, he will not be liable."

The Glasscocks asserted their good faith in refusing to sign the quit claim deed and this issue was submitted to the jury under proper instructions. The jury reached a contrary result. The jury had before it competent evidence on which to find malice or want of probable cause. The verdict is affirmed.

### IV

Finally, the Glasscocks contend that the award of attorney's fees for the prosecution of this action was improper. McDowell relies upon two statutory provisions as authority for awarding attorney's fees. The first, 16 O.S.1981 § 79, is applicable only in quiet title actions. The second, 12 O.S.1981 § 940, allows for attorney's fees in actions for injury to real property and provides in part:

> In any civil action to recover damages for the negligent or *willful injury to property* and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action. (Emphasis added.)

Title to real property is a necessary attribute of that property. Any disparagement or slander of that title thus is an injury to the property itself. The jury in this case found the injury to be willful, that is without probable cause.

The award of attorney's fees was not error.

BACON, P.J., and BOYDSTON, J., concur.